## 5204.  EVANS v. THE STATE.

1. A challenge propter affectum to a juror in a criminal case should be sustained when it is made to appear to the court as trior that the juror, in his official capacity as justice of the peace, received the affidavit and issued the warrant which was the basis of the accusation. The smallest degree of interest is a decisive objection to a juror in a criminal case.

2. In charging upon alibi it is error to instruct the jury that if they "believe from the evidence, and believe it beyond a reasonable doubt, that it was impossible for the defendant to be present at the scene of the offense at the time of its commission, and that the evidence in this respect is sufficient to exclude the possibility of the defendant's presence at the time and place it was committed, you will be authorized to acquit the defendant." To establish an alibi the evidence must be sufficient to exclude the possibility of the defendant's presence at the scene of the crime at the time of its commission, but he is not required to establish the impossibility of his presence beyond a reasonable doubt; it is sufficient if this impossibility is shown to the reasonable satisfaction of the jury. Proof of alibi may entitle the accused to an acquittal even though it goes no further than to raise a reasonable doubt of the defendant's guilt when considered on the general case with the rest of the testimony; and for this reason, if for no other, to require the defendant to establish the defense of alibi to the exclusion of a reasonable doubt places on him a burden not imposed by law.

DECIDED OCTOBER 29, 1913.

Accusation of sale of liquor; from city court of Leesburg—Judge Long. August 21, 1913.

*W. G. Martin,* for plaintiff in error.  *J. B. Hoyle, solicitor,* contra.

RUSSELL, J.  The plaintiff in error excepts to the judgment overruling his motion for a new trial. The accusation was based upon an affidavit made before a justice of the peace, who issued the warrant for the defendant's arrest. On the panel put upon the prisoner this justice of the peace appeared as a juror. Immediately after the panel was put upon the accused, and before the jury was stricken or sworn, the accused objected to the justice of the peace, upon the ground that he was not a competent juror, because of the facts stated above, and, in substantiation of this objection, submitted to the court the affidavit of the prosecutor and the warrant issued by the justice, commanding the arrest of the defendant, and the entry of the arrest (from which it appears that the prosecutor was also the arresting officer). The court overruled the objection and held that the juror was competent, and this ruling is the subject of the first assignment of error.

1.   In our search for precedents we have been unable to find a case identical in its facts with the case at bar.   Apparently, in this State, the practice of excusing a juror under such circumstances has been very general, for otherwise the question would ere this have been raised in some form in the Supreme Court.   However, upon the question now squarely presented, whether, upon timely challenge to the poll, a juror in a criminal case who in his official capacity as a magistrate received the affidavit of the prosecutor and issued the warrant for the arrest of the accused is subject to challenge ·propter affectum, we are compelled to hold that upon proof of the fact that the challenged juror is the individual who issued the warrant, he should be held subject to challenge, and that to him the defendant should not be required to exercise the right of peremptory challenge by exhausting one of his strikes.   The argument of learned counsel for the State, to the effect that justices of the peace are not disqualified from serving as jurors in criminal cases, has no bearing whatever upon the question.   Of course the mere fact that a juror might happen to be a justice of the peace would be no objection to his qualification as a juror, and, in fact, the intelligence and personal character of these magistrates is such as ordinarily to render them peculiarly qualified for jury service. The objection in the case at bar was not that the juror Godwin was a justice of the peace, but that he was the justice who issued the warrant in this case.   And it is for this special reason that we hold that he was disqualified.

Nothing is better settled than that no man can be a judge in his own case, and the disqualification dependent upon this rule has very naturally been extended, in the interest of fair jury trials, to include any and every case in which the trior in question does not possess an exclusive interest but may be affected by a partial interest in the subject-matter.   The principle that a juror should not sit on a cause in which he is eventually interested is founded in wisdom and justice, and has no regard to the degree of pecuniary interest.   Under our law, the justice of the peace who issues a warrant in a criminal case has a pecuniary interest in the result of the trial; for if the accused is convicted and is sentenced to pay a fine and the costs, and does pay it, the fees for issuing the warrant and for other services legally performed by the justice must be included in the costs and be paid as a part of the costs before the de-

fendant is entitled to be released. It matters not how upright the magistrate may be, nor that the amount of his costs may be small. It may be that the juror in question is a man of such Spartan firmness that his interest would not affect him, even though it were a hundredfold as large; and history is not without instances of men of that stamp; and yet if the courts should proceed upon any such theory as this, the rule of absolute impartiality (which is the very foundation of a fair trial by jury) would be violated. Rules must be made for ordinary cases, and not for exceptions. And unless the rule that every juror who tries the case of his fellow citizen must be not only absolutely fair and impartial, but also absolutely disinterested, is strictly adhered to and zealously upheld, our boasted right of trial by jury will become little more than a mockery. The court's duty to provide an impartial jury is absolutely imperative.

In a South Carolina case the court, in discussing the interest of jurors (Horry's case, 1 Bay, 229), adopts the following notable quotation from Blackstone: "The smallest degree of interest is a decisive objection to a witness, and much more so to a juror" (2 Bl. Com. 480). In this State the interest of a witness is no longer ground for objection, but as to a juror there has been no relaxation of Blackstone's rule, so far as we are able to discover. No right has been more sacredly guarded by the courts in this State than that accorded to every litigant of having his case tried by jurors not only fair, impartial, and disinterested, but even beyond suspicion of bias. In *Anderson* v. *State,* 63 *Ga.* 675, the surety upon the defendant's bond was held to be disqualified for interest upon objection by the State, and certainly such a surety's pecuniary interest in the defendant is not ordinarily greater than would be the interest of a committing magistrate in his costs. In *Johnson* v. *Americus,* 46 *Ga.* 81, and *Mayor &c. of Cartersville* v. *Lyon,* 69 *Ga.* 577, the Supreme Court held that citizens of a municipality were disqualified, because of interest, to sit as jurors in causes in which the municipality was a party; and it required a statute to abrogate this rule. Inasmuch as the right of liberty is more precious than the possession of mere worldly goods, it would seem, certainly in the absence of a statute and in criminal prosecutions, that the rule of Blackstone should be strictly adhered to. It is true the qualification of a juror, when he is put upon the court as a trior, is a

matter addressed peculiarly to the court's discretion; but it should be borne in mind that. in the determination of the qualification of jurors in criminal prosecutions, it has uniformly been held that the discretion or latitude given the trial judge is greater when exercised in excusing jurors whose qualifications are in doubt than in retaining them.

Not only on account of pecuniary interest, but also for other reasons, the justice of the peace who binds over one accused of crime should not be held qualified to pass upon his guilt or innocence. In the first place, the act of taking the affidavit is not purely ministerial. Gillett v. Thiebold, 9 Kansas, 431. The magistrate determines judicially to order an arrest. And even if it be true that every citizen has a right to have a warrant issued when he is willing to swear that another has committed a crime, still the warrant can not be issued until the prosecutor has sworn to the charge; and the crime to which the prosecutor swears can not be properly designated in the warrant until there has been a statement of at least enough of the facts to enable the justice of the peace to determine the offense for which the warrant should be issued. Under such circumstances it would be unreasonable to suppose that an intelligent man would not form some kind of an opinion with reference to the case which has been stated and verified in his hearing by the affidavit of the prosecutor. Not only is this so, but as an officer of the State the justice of the peace who issues the warrant sets in motion the entire criminal machinery of the State, from the operation of which the trial of the defendant results; and human nature is of such fashion that the justice of the peace will generally feel such interest in his handiwork as not to desire to be held blamable for issuing a warrant without sufficient cause, or without any cause.

Upon grounds of public policy, if for no other reason, and in order that one accused of crime may have no semblance of cause for complaint, an officer of the State who, in the discharge of his duty, has taken an affidavit charging a citizen with crime, and thereupon has issued the warrant upon which he was arrested, should not be put upon the accused as a juror on his trial for that crime. The safety of every social institution worth preserving depends upon the integrity of our jury system. If there be possibility of error either way, it is far better to err by being overcautious in adhering

to every regulation which will tend to provide juries whose impartiality shall be, like the virtue of Cæsar's wife, above suspicion.

2. The defendant, upon his trial, relied upon alibi as his defense. Upon this subject the court charged the jury as follows: "The defendant claims he was not present at the place the crime was committed. If you believe from the evidence, and believe it beyond a reasonable doubt, that it was impossible for the defendant to be present at the scene of the offense at the time of its commission, and that the evidence in this connection is sufficient to exclude the possibility of the defendant's presence at the time and place it was committed, you will be authorized to acquit the defendant." We think the court erred in this instruction. As pointed out by Chief Justice Bleckley in *Harrison* v. *State,* 83 *Ga.* 129 (9 S. E. 542), the defense of alibi rests upon two prongs: The jury may either consider the alibi on the general case, for the purpose of determining whether any view of the alibi in connection with other evidence raises a reasonable doubt; or they may consider whether the proof of the alibi alone and of itself raises such a doubt as will require the jury to acquit. But it is expressly held that no matter which may be the purpose to which the proof of alibi is put, the defendant is not required to establish this defense by that degree of proof which excludes every reasonable doubt, but he is only required to establish it to the reasonable satisfaction of the jury. For that reason, the judge in the present case, by telling the jury that they would be authorized to acquit the defendant if they believed beyond a reasonable doubt that it was impossible for him to be present at the scene of the offense at the time of its commission, placed upon him a greater burden than that imposed by law. The implication from this was that the burden was upon the accused to establish this defense beyond a reasonable doubt. See *McDonald* v. *State,* 12 *Ga. App.* 526. To say that one who relies upon an alibi as a defense must prove beyond a reasonable doubt that it was impossible for him to be present at the scene of the crime at the time of its commission would take away from the jury their right of acquitting the defendant if the proof of alibi, though not perfect, was such as to raise a reasonable doubt as to whether he was present at the commission of the crime or not.

*Judgment reversed.*