## 5339.  NIXON *et al. v.* THE STATE.

1. The instruction to the jury that they should look to the facts and circumstances at "the very time of the actual killing," to see whether it was justifiable, was error, as the offense could be reduced to manslaughter through passion aroused some time before the killing.
2. It is error to charge, in effect, that the defendant must make out his defense beyond a reasonable doubt.
3. It was error to allow counsel for the State, in his argument to the jury, to give his personal opinion as to the guilt of the defendant, though in a preceding argument counsel for the defendant may have been guilty of a similar breach of the rule.

### Decided January 20, 1914.

Indictment for murder; from Hart superior court—Judge Meadow.  October 11, 1913.

*Skelton & Skelton, J. H. & Parke Skelton, A. G. & Julian McCurry,* for plaintiffs in error.

*Thomas J. Brown, solicitor-general, J. N. Worley, A. A. McCurry,* contra.

Roan, J.  During the night of August 3, 1912, in the public road, near the house of Bud Harbin, in Hart county, Georgia, John Heaton was shot and killed, Henry Nixon firing the fatal shot, and Ellis Nixon being present.  A sister of these Nixons was the wife of Heaton, and some time before the killing she left him and went with her infant to the home of her father, and for the time being was making it her home.  There is evidence that the deceased was a man of violent character, which was aggravated when he was drinking, and on the night of the tragedy he was under the influence of liquor.  He was at Reed Creek Church that night, and, about eleven o'clock, asked one Tom Thrasher, to go with him to Tom Nixon's (his father-in-law).  Before that he went to his own home and told his daughter that if he did not get back inside of 35 or 40 minutes, she might know that he was killed or had killed somebody.  When the deceased arrived at Tom Nixon's, he raised a row with his mother-in-law and the other members of the family that were there.  No male members of the family were at home at the time.  He indulged in violent denunciation of his mother-in-law and the whole Nixon family, threatening to kill them all, and fired three shots over them into the house.  His wife, through fright, grabbed her baby and fled in her nightclothes to a neighbor's house, a distance of a mile.  Mrs. Nixon, the mother-in-law,

screamed for help. At this time Henry and Ellis Nixon were at the home of Ellis Nixon, where they were arranging to go, the next morning, to Anderson, South Carolina, some twenty miles distant; and, hearing the screams of their mother and knowing that no male member of the family was at home, Ellis took his shotgun and Henry procured a pistol, and they together went running to the home of their mother. On their arrival they were informed of Heaton's conduct, but he had left, and Mrs. Nixon advised them to telephone to the office of the sheriff at Hartwell and tell him of Heaton's conduct, and have him arrested. They started to A. H. Martin's house, where there was a telephone. When they arrived there they realized for the first time that the telephone office at Hartwell was closed, as it closed every night at ten o'clock, and they started back home on the road they had come, and a short distance down the road they met the deceased, and, after some short discussion with him, the killing occurred. They were jointly indicted for murder, and were tried together, and the jury returned a verdict finding both defendants guilty of voluntary manslaughter. They except to the overruling of their motion for a new trial.

1. In the 6th ground of the motion for a new trial the following excerpt from the charge of the court is complained of: "Now, in your investigations in this case, taking into consideration all the facts and circumstances surrounding it, you want to go to the very time of this actual killing, and see what the facts were, what were the circumstances at the instant of the killing, to determine whether or not, at the time the fatal shot was fired, it was justifiable, under the rules of law I have given you in charge." The movants insist this was error "because it confined the jury's investigation to what happened at the instant of the killing, and excluded from the jury a proper consideration of all the facts and circumstances that preceded and led up to the killing." We hold that the exception to this part of the charge is well taken, as it is at all times proper for the jury to consider what provocation, if any, was given the defendant prior to the killing, so that they may determine whether the killing occurred by reason of his passion being aroused to any uncontrollable pitch, by the previous conduct of the deceased to himself or to some near relative or kinsman to whom he owed the duty of protection, or whether it was a chance meeting and the deceased was killed without any cause further than what occurred at the

exact instant of the killing. In determining whether a killing is murder or voluntary manslaughter, or justifiable, all the facts and circumstances that preceded and led up to the killing are proper matter for consideration by the jury, so that they may determine, from all the facts and circumstances surrounding the killing, whether or not sufficient provocation had been given by the person killed, and whether or not sufficient time had elapsed between the provocation and the killing for reason to resume its sway and passion to cool down. If sufficient time elapsed for reason to resume its sway, then the killing, if no other provocation existed, would be attributed to deliberate revenge and be punished as murder, but if the inflamed passion aroused by the provocation had not had time to subside and reason to resume its sway (and this is a question for the jury), the jury would have the right to reduce their finding from murder to voluntary manslaughter, on account of the inflamed passion, justifiably aroused, that had not had time to abate. The criticism upon this part of the charge is just, as it restricted the jury to too narrow a compass.

2. In the 7th ground of the motion for a new trial it is complained that the court erred in charging the jury, "If you do not believe that the deceased was at the time of the killing endeavoring by violence or surprise to commit a felony on either of these defendants, and further do not believe that beyond a reasonable doubt,—and where I say believe, you will carry with it, you must believe beyond a reasonable doubt," etc. Similar language is complained of in the 8th ground. This portion of the charge, as contended in the motion for a new trial, imposed upon the defendants a greater burden than the law authorizes. One of the defenses insisted upon was that the deceased was endeavoring by violence or surprise to commit a felony upon one or both of the defendants; and while the law requires the guilt of the defendants to be shown by evidence that convinces the minds of the jury beyond a reasonable doubt of their guilt, before the jury would be authorized to convict, it nowhere requires that the defendants, in setting up their defense, must establish it by evidence that convinces the jury beyond a reasonable doubt of its truth. We have no doubt that the learned trial judge inadvertently used the language complained of, but we can not hold that it was harmless; we have no way of telling how much influence it may have had on the jury in arriving at

their verdict. The decision in *McDonald* v. *State,* 12 *Ga. App.* 526 (77 S. E. 655), is directly in point and is controlling.

3. The 19th ground of the motion for a new trial assigns error because the court allowed Judge Joseph N. Worley, of counsel for the State, in his concluding argument to the jury, to use the following language, without rebuke, and without telling the jury to disregard and pay no attention to it: "These defendants," referring to Henry and Ellis Nixon, "in my opinion are guilty of murder, and you," referring and pointing to A. G. McCurry, Esq., of counsel for the defendants, "know it. If you are not guilty," pointing to the defendants, "why did you not put up L. T. Weldon, an eyewitness to the killing, and prove your innocence? You did not do it because you knew you were guilty, and could not prove your innocence by Weldon;" Weldon, the person referred to by Judge Worley, being a witness subpœnaed and sequestered by the State, but not introduced by the State. Counsel for the defendant duly objected to this argument as improper, illegal, and prejudicial to the defendants, and moved the court to instruct the jury that the argument was illegal and improper, and that the jury should pay no attention to it. The objection was overruled and the State's counsel was instructed to proceed with the argument. The court adds to the 19th ground the following: "Counsel for defense had previously argued to the jury, calling their attention to the fact that the State had not introduced the witness L. T. Weldon, and argued that Weldon would testify to the injury of the State's case. Judge Joseph N. Worley, when objection to his argument referred to was made, stated to the court that he was replying to the attack made on counsel for the State in not putting up the witness Weldon. The court stated, in effect, that Judge Worley had a right to reply to any attacks made on him by opposing counsel." We hold that the court committed error in allowing Judge Worley to give his personal opinion as to the guilt of the accused. Of course, it was legitimate for him to have argued their guilt from the evidence, but outside of that it was not proper to give his personal opinion. Being a distinguished man, having presided over the courts of the county in which this case was being tried, no one can tell how much influence his personal opinion, so dogmatically asserted, may have had with the jury. Chief Justice Simmons, in the case of *Bennett* v. *State,* 86 *Ga.* 405 (12 S. E. 808, 12 L. R. A. 449, 22 Am. St.

R. 465), says: "We hold that the court erred in allowing the
State's counsel, over the objection of the prisoner's counsel, to make
this argument to the jury, although the latter had first violated the
rules of court by going outside of the evidence. The fact that the
prisoner's counsel had violated the rule would not authorize the
State's counsel to do likewise. To hold that because counsel on one
side violates a rule of court in his address to the jury, by making
statements outside of the evidence, the opposing counsel has the
right to violate the rule in like manner, over objections of oppos-
ing counsel, would be to turn a court, where justice should be ad-
ministered according to the rules of evidence and of law, into a
town-meeting. We could as well hold that if the prisoner's counsel
introduces illegal evidence, the State's counsel can reply by intro-
ducing other illegal evidence; and this, we have held, can not be
done. *Woolfolk* v. *State,* 81 *Ga.* 551 [8 S. E. 724]. In the case
of *Mitchum* v. *State,* 11 *Ga.* 615, one of the grounds of the motion
for a new trial was that the court erred in allowing the solicitor-
general, in the concluding argument, although objected to by coun-
sel for the accused, to support the testimony of Eilands by stating
that he was an unwilling witness for the State, that he had refused
to come under subpœna, and was brought by arrest under attach-
ment, none of which was in evidence before the jury; the court
remarking that it was allowable because B. K. Harrison, one of the
defendant's counsel, in his argument to the jury, had stated that
Eilands was locked up on the Sabbath before the trial with the
father-in-law of the deceased and the prosecutor, drinking with
them, none of which was in evidence, Mr. Harrison contending
that Eilands was a willing and a bribed witness. In the opinion
(p. 628), Nisbet, J., in dealing with this ground, said: 'The
seventh exception is founded on the refusal of the court to restrain
the solicitor-general, although requested to do so by counsel for the
prisoner, from commenting on facts not in evidence, in his con-
cluding speech to the jury. This we think was error. We have
had occasion to consider the habit of counsel in addressing the
jury, of commenting upon matters not proven and not growing out
of the pleadings, before, and have been content with visiting it
with a decided and emphatic disapproval. . . We shall hold,
as we rule in this case, that it is good ground for a new trial.
There was, it is true, some excuse for the license conceded to the

solicitor-general in this case, in the fact that counsel for the prisoner had already taken the same liberty in his argument to the jury.'" Judge Russell, in delivering the opinion in *Moore* v. *State*, 10 *Ga. App.* 812 (74 S. E. 318), says: "If the statement is an expression of personal opinion of the prosecuting attorney that the defendant is guilty, this is error, and it must be presumed to be prejudicial error, because cases can be imagined where counsel might be engaged for the prosecution whose personal opinion would have such weight with the jury as to unduly affect their finding upon the facts. . . If the law, in its care for the rights of defendants and in seeing that they are accorded a fair trial, deems it no proper evidence of guilt that the defendant (who most frequently has it within his power to explain circumstances evidencing his guilt) makes no statement in his own behalf, it would seem that an inference of guilt, dependent only upon the fact that the defendant decided not to introduce a witness whom he had summoned, and whom he said he desired to use for the purpose of impeachment, would not rest upon a more substantial basis. If it is not permissible to argue that the defendant is probably guilty because he sits silently by and does not deny the truth of statements which he, above all others, must know to be false, when the jury can believe his statement in preference to sworn testimony, it would seem unreasonable that the law should permit the jury to presume that the defendant is guilty because he did not introduce a witness whom he had summoned for the purpose of impeaching a witness testifying against him." In that case the judgment was reversed solely upon the ground that the argument was improper and prejudicial. See also *O'Dell* v. *State*, 120 *Ga.* 155 (74 S. E. 577); *Knox* v. *State*, 112 *Ga.* 373 (37 S. E. 416).

We find no material error in any of the grounds of the motion for a new trial save the four that we have dealt with. It is true that some of the instructions complained of in other grounds are somewhat confusing and may be a little inapt in expression, but we do not think they require a reversal.       *Judgment reversed.*