## 26321. MOYERS *v.* THE STATE.

DECIDED JULY 15, 1938.

*George G. Finch, Graham Wright,* for plaintiff in error.

*John A. Boykin,* solicitor-general, *J. W. LeCraw, James A. Branch,* contra.

BROYLES, C. J. W. T. Moyers was convicted of robbery by intimidation. He introduced no evidence, but made a statement to the jury in which he admitted receiving thirty thousand dollars in cash from the person charged to have been robbed, but stated that the money was voluntarily paid to him by said person in satisfaction of a debt for that amount due him, and that he (Moyers), obtained the money without the use of any intimidation. His motion for new trial was overruled, and he excepted.

Special ground 1 of the motion for new trial complains of the following excerpt from the charge of the court: "You [the jury] are the exclusive judges of the credibility of the witnesses; and the law also makes you the judges of the law in criminal cases as you

receive the law from the court and apply it to the testimony or evidence in the case." The exception to the charge was, that, under par. 1 of sec. 2 of art. 1 of the constitution of Georgia (Code, § 2-201), the jury in all criminal cases are the judges of the law and the facts. In *Register* v. *State,* 10 *Ga. App.* 623, 628 (74 S. E. 429), this court held: "The interpretation now made by the Supreme Court of this provision of the law is that while jurors are the judges of the law as well as of the facts in criminal cases, they must accept the law as laid down and expounded to them by the presiding judge. Beginning with the ruling in the case of *Brown* v. *State,* 40 *Ga.* 689, this has been the uniform interpretation of this law by the Supreme Court to the present day, and we may consider the law as now settled that in the trial of criminal cases it is the *duty* of the jury to *take the law from the court,* as it is their duty to take the evidence from the witnesses." Under the foregoing ruling, the excerpt from the charge was not error for any reason assigned.

In special ground 4 of the motion, the following excerpt from the charge is complained of: "I charge you further, that the defendant claims that Mr. Woodruff owed him a debt of thirty thousand dollars, and that he did not intimidate or attempt to intimidate Mr. Glenn or any one else into delivering him any sum of money; that he did not collect any money by force or by intimidation or by threat or by the presentation of a pistol, but that the money was paid to him voluntarily as an extinguishment of a debt already due. The defendant further states that he only presented a weapon when the circumstances were such as to excite a reasonable fear that Walter Brown and Ernest Woodruff were about to resort to violence against him. He claims that he did not use said weapon to intimidate Mr. Glenn into paying the money, and made no demand for the payment of money accompanied by the pointing or the presentation of a pistol. If you believe that under such circumstances the defendant was paid this sum of money or any other sum of money in extinguishment of a debt and that the sum of money obtained from Mr. Glenn was not obtained by reason of intimidation and fear, *and if you believe this beyond a reasonable doubt, you would be justified in acquitting this defendant."* (Italics ours.) It is alleged that the charge "was error, for the reason that it imposed the burden on the defendant of proving his inno-

cence and contentions beyond a reasonable doubt, whereas the law of Georgia imposes on the State the burden of proving the guilt of the defendant beyond a reasonable doubt, and said charge imposed a higher burden on the defendant to authorize his acquittal than is required under sections 38-108 and 38-110, Code of 1933." My colleagues, Judges MacIntyre and Guerry, are of the opinion that the exception to the charge is well taken; and their view on the matter, as expressed by them, is as follows:

There can be no question that this charge is error and will require a reversal, unless coming within some of the exceptions provided by law which would make it harmless. If the evidence and the defendant's statement demanded a verdict of guilty, this error might be treated as harmless. It is apparent from the language of the charge quoted that if the jury believed the defendant's statement, which they had a right to do, contrary to the sworn testimony, they could acquit him. It is only when the evidence and the statement of the accused in a criminal case demand a verdict of guilty that we may say a verdict is demanded and an erroneous charge is harmless. *Williams* v. *State,* 15 *Ga. App.* 311 (82 S. E. 817); *Usry* v. *State,* 17 *Ga. App.* 268 (2) (86 S. E. 417); *Kennedy* v. *State,* 51 *Ga. App.* 543, 544 (181 S. E. 139); *Cason* v. *State,* 16 *Ga. App.* 824 (86 S. E. 644). The verdict was not demanded here. It is true that the court in other portions of the charge fully and fairly presented the law in respect to the presumption of innocence and the burden of proof. In *McDonald* v. *State,* 12 *Ga. App.* 526 (77 S. E. 655), where language somewhat similar to that complained of in the present case was used, the State contended, as it does here, that the error was harmless and was a slip of the tongue. In discussing the case it was said: "The instruction was not general in its character; it was an application of the law to evidence in behalf of the accused, and it was a positive, concrete instruction to the jury that this evidence would not be sufficient to acquit the accused, unless the jury were convinced of its truth beyond a reasonable doubt. Doubtless the learned and experienced trial judge did not intend to tell the jury that the burden was upon the accused to prove his defense beyond a reasonable doubt, . . and it is wholly immaterial that the error was not intentional. . . Nor do we think that the error was cured by the general instructions correctly stating the rule as

to the presumption of innocence and the burden imposed upon the State to prove to the satisfaction of the jury beyond a reasonable doubt every material allegation in the indictment. A concrete charge applying the law to the facts of the particular case is more convincing and better understood by a jury than the statement of general principles of law, however familiar they may be." The language quoted is particularly applicable to the charge in the present case. See also *Williams* v. *State*, 12 *Ga. App.* 337, 341 (77 S. E. 189); *Raysor* v. *State*, 132 *Ga.* 237 (63 S. E. 786); *Nixon* v. *State*, 14 *Ga. App.* 261 (2), 263 (80 S. E. 513). In the *Nixon* case it was said: "We have no doubt that the learned trial judge inadvertently used the language complained of, but we can not hold that it was harmless; we have no way of telling how much influence it may have had on the jury in arriving at their verdict." See *Payne* v. *State*, 47 *Ga. App.* 136 (169 S. E. 888); *Evans* v. *State*, 13 *Ga. App.* 700, 704 (79 S. E. 916). For a slip of the tongue to be harmless error the true meaning must be palpable, and so clearly understood by the jury. The language used by the learned trial judge in this case was not a slip of the tongue, although he may not have realized the meaning of his language. The use of one word when another is clearly meant or is necessary to make understandable the meaning intended may constitute a "lapsus linguæ." The use of one entire paragraph is not such a slip of the tongue. The language here used is not a verbal inaccuracy, such as may result where the speaker is evidently intending to say one thing but says another. Counsel for the State suggest that the eighty-eight pages of annotations in the Code, § 70-207, with respect to errors in a charge, and the fact that in the American Digest System as many Georgia cases are cited thereunder as appear in all the other States, is a reason why this court should not reverse this case. This might present a fine argument for a change of our law in respect to the presentation of exceptions to the charge of the court at a time when palpable error could and would be corrected by the trial judge. It does not authorize this court to disregard the plain decisions of the Supreme Court and of this court. Especially is this true where the legislature has only recently preserved this precedent and denied the rule-making power of the superior-court judges in convention. Whatever may be our views with respect to the practical workings

of our system of appeal, we are constrained to hold that the charge complained of was reversible error. The failure of counsel for the defendant to take exceptions to the charge within the time required by a rule passed by the superior-court judges in convention does not affect this ruling, since under the decision of the Supreme Court in this case said judges in convention were without authority to pass such a rule.

The opinion of the writer (Broyles, C. J.) is that this case is differentiated by its facts from the cases cited in the majority opinion—it being a much stronger one for the State than any of those cited. The rulings in those cases are highly technical; and while of course they are binding upon this court, I do not think that they should be *extended* to cover the facts of this case. When the excerpt from the charge (which evidently was a mere "slip of the tongue") is considered in the light of the entire charge, the evidence for the State (which demanded the verdict rendered), the admissions made in the statement of the defendant as to receiving the thirty thousand dollars in *cash* while *he was carrying an exposed and loaded pistol,* and the rulings of the Supreme Court in this case, it affords no cause for another trial. Such a trial can have no other result than to impede and delay the administration of justice.

Ground 13 excepts to the introduction of certain documentary evidence (an article entitled "Time Is Out of Joint. Author, William T. Moyers"), over the defendant's objection that it was "not material or relevant to any issue made by the indictment or the defendant's statement." It is our opinion that in view of the lengthy statement of the defendant concerning the "Liberty League," the Trust Company of Georgia, and his connection therewith, the evidence was admissible in rebuttal of his statement, and to illustrate his motives and conduct in the alleged robbery.

The remaining special grounds of the motion for new trial are without substantial merit. The general grounds also are without merit. The evidence for the State demanded a finding that the accused, by threats of bodily harm and other acts of intimidation, forced the person alleged to have been robbed to hand over to him (the accused) thirty thousand dollars in cash. The defendant introduced no evidence; and in his statement to the jury he admitted obtaining the thirty thousand dollars in cash, but stated

that the person handing over the money did so voluntarily in payment of a just and past-due debt, and that he (the accused) employed no threats or any other sort of intimidation in securing the money. The defendant's statement as to the debt was contradicted by the evidence. The main contention of counsel for the accused seems to be based upon the defendant's statement, and their argument is that if the person charged to have been robbed owed Moyers thirty thousand dollars for services rendered, or if Moyers in good faith so believed, there was no intent on Moyers' part to steal the money, and therefore he could not legally be convicted of the offense of robbery, even if he collected the money by force or intimidation. In the first place, the claim that the money was collected in payment of a debt due Moyers was raised solely by his statement, and was contradicted by the evidence for the State, and the jury had a right to reject the statement and to believe the evidence for the State. However, assuming that such a debt was due Moyers, he did not have the right to use force or intimidation to collect it, and the evidence for the State amply authorized the jury to find that he did collect it by intimidation. As was said by the Supreme Court in this case in answer to certified question (186 *Ga.* 446, 197 S. E. 846), "The law favors the creditor in the collection of his debts, but by no stretch of the law can it give him, without trial, title, or the right to possession of the property of the debtor. Debt is a hard master, and often gets its subjects in serious and difficult situations; yet it does not alone transfer to the creditor the title or right of possession of the property of the debtor. The debtor is entitled, under the law, to hold his property against the creditor until it is subjected to his debt by due process of law. The reason the courts will not adjudge one guilty of robbery who takes property under a bona fide claim of right of title or possession to the specific property taken is because of the use of the word 'fraudulent' in the statute defining robbery. The word fraudulent, as hereinbefore stated, is construed to mean with intent to steal; and one ordinarily can not steal his own property. But such holding does not imply that even such taking is justified or favored by the law. The individual injured and angered is one-sided and prone to violence. It is not safe to commit the administration of justice to his hands. The law affords machinery to recover property wrongfully withheld. To let one enforce his

own rights, and to use force to recover his own property, or violence to collect his debts, means substituting for the orderly processes of the law the rule of the machine-gun, sawed-off shotguns, pistols, knives, sandbags, bludgeons, and other weapons accompanied by violence and a disturbance of the peace, which is both dangerous and unwise, has no place among civilized men, and is not approved by law. Wherefore we hold the violent taking of money or property from the person of another by force or intimidation, without the consent of the owner, for the purpose of converting the same to the use of the taker for the payment of a demand claimed to be due him by one from whom the money or property is so taken, constitutes the offense of robbery. And that he can not under such circumstances justify the taking and be excused of the offense of robbery on the ground that the person from whom the money or property was so taken was indebted to him, and that the taking was to pay the debt. This holding is, with one exception (*Crawford* v. *State,* 90 *Ga.* 701 [17 S. E. 628, 35 Am. St. R. 242]), in harmony with the decisions of this court, the Court of Appeals, and with the better-considered authority of other jurisdictions. In so far as the decision in the *Crawford* case is in conflict with the holding herein, the same is obiter dictum. . . Be this as it may, we are requested to question, review, and overrule the decision in the *Crawford* case. Now, upon consideration of the same, the decision in the *Crawford* case is formally questioned and reviewed; and in so far as same may be in conflict with the decision herein rendered, it is hereby reversed and overruled." It follows from the foregoing excerpt from the decision of the Supreme Court, and from the evidence adduced, that the defendant's conviction of the offense charged was amply authorized.

The judgment is reversed solely upon the ground that the charge of the court set forth in ground 4 (supra) was harmful error.

*Judgment reversed. MacIntyre and Guerry, JJ., concur. Broyles, C. J., dissents.*