## 5229.   CASON *v.* THE STATE.

1. An indictment under section 186 of the Penal Code, which alleges that the accused did "embezzle, steal, secrete, and fraudulently take and carry away" money belonging to a banking corporation of this State, is not subject to demurrer on the ground that it fails to allege that the money was taken and carried away with intent to steal the same.
2. The word "steal" implies a taking and carrying away and a criminal conversion. While every crime consists in the joint operation of act and intention, and on the trial of an indictment of the nature above indicated the trial judge might, with propriety, instruct the jury that the money must have been taken with intent to steal, yet his failure to do so in the present case was not cause for a new trial; the jury having been instructed that before they could convict, they must be satisfied, beyond a reasonable doubt, that the accused did embezzle, steal, secrete, and fraudulently take and carry away the money described in the indictment.
3. The indictment was not subject to any of the demurrers.
4. The evidence demanded the conviction of the accused, and it was therefore immaterial what the judge charged or failed to charge the jury.
5. There being in the evidence or in the prisoner's statement nothing in reference to the length of time he had been in jail before the trial, it was not proper for counsel for the accused, in requesting the jury, in the event of conviction, to recommend a misdemeanor punishment, to state the length of time the accused had been in jail; and the court did not err in compelling counsel to refrain from such argument.
6. The trial judge may, in the interest of truth, interrogate a witness in

---

NOTE. See footnote on page 817, ante.

order to elucidate matters which have not been made clear to the court, provided that in so doing the judge does not intimate or express an opinion in reference to what has or has not been proved or the guilt of the accused.

7. Remarks made by a trial judge in imposing sentence after a verdict of guilty can not be made the subject-matter of review in the Court of Appeals.

8. A certificate made and filed for the purpose of organizing a banking association under the general banking law, if in conformity with the terms of that act, is evidence of the truth of the facts that it recites; and is consequently evidence that the provisions of the statute have been complied with, and that the company was duly organized. From the time that such certificate is made, filed, and recorded, the association becomes a corporation, or quasi corporation, under the statute, possessing all the privileges and competent to exercise all the powers that the statute confers. And from that time every person is precluded from denying its legal or corporate existence in any suit or controversy whatever. The certificate is revocable for fraud in its procurement only in a direct proceeding for that purpose, brought by the State.

DECIDED FEBRUARY 4, 1914.  REHEARING DENIED FEBRUARY 25, 1914.

Indictment for embezzlement; from Colquitt superior court— Judge Thomas. September 6, 1913.

*L. L. Moore, Shipp & Kline,* for plaintiff in error.

*J. A. Wilkes, solicitor-general, W. A. Covington,* contra.

POTTLE, J. Cason was arraigned under an indictment based on section 186 of the Penal Code. A demurrer to the indictment was overruled, and the accused was convicted. He excepted to the over-ruling of his demurrer and to the refusal of the court to sustain his motion for a new trial. The indictment was in six counts, all in substantially the same language, each count charging the embezzlement of different sums of money. The first count charged the accused with the offense of embezzlement committed on a certain day in Colquitt county, Georgia, "unlawfully and with force and arms, and being then and there the cashier and servant at Crosland, Ga., said county, for and in behalf of the Bank of Crosland, a banking corporation and corporate body under the laws of Georgia, and, as such cashier and servant, being then and there in the possession of $15 in money of the value of $15, belonging to the said Bank of Crosland, a banking corporation and corporate body as aforesaid, as such cashier and servant, and by virtue of his employment by said banking corporation and corporate body, and being charged with the possession, safety, and care of said sum of money, then and there said sum of money he did embezzle, steal,

secrete, and fraudulently take and carry away, contrary to the laws of said State, the good order, peace, and dignity thereof." There were thirty grounds of demurrer, several of them general, to the effect that the indictment sets out no offense. It is also complained that the venue of the offense is not alleged; that it does not appear that the accused was either an officer or servant of the bank; that it is not averred that the money came into his hands as an officer or servant of the bank; that it is not averred that the accused was at the time of the alleged embezzlement employed in any station, department, or office of the bank; that it does not appear that the bank was created under the laws of Georgia; that it is not averred that the accused came into possession of the money by virtue of his connection with the bank; that section 186 of the Penal Code is unconstitutional, because it does not have a uniform operation throughout the State, and applies only to a designated class of people, and because it is a special law for which provision had been previously made by the general law on the subject of larceny after trust; that the indictment does not allege in what capacity the accused was charged with possession of the money alleged to have been embezzled; that it fails to show what fiduciary relation the accused occupied to the bank; that it fails to aver that the money belonged to the bank; that it fails to show any conversion by the accused or to aver that he was in possession of the money at the time of the alleged embezzlement; that it fails to aver that either the bank or any other person was damaged by the alleged embezzlement; that it fails to sufficiently describe the money alleged to have been embezzled; that it fails to aver that the accused carried away the money alleged to have been embezzled.

1. The ground of demurrer upon which most stress is laid in the brief of counsel for the plaintiff in error is that the indictment fails to allege a criminal intent. Section 186 of the Penal Code is in the following language, "Any officer, servant, or other person employed in any department, station, or office in any bank or other corporate body in this State, or any president, director, or stockholder of any bank or other corporate body in this State, who shall embezzle, steal, secrete, or fraudulently take and carry away any money, paper, book or other property or effects, shall be punished by imprisonment and labor in the penitentiary for not less than two years nor longer than seven years." Every crime consists in the

joint operation of the act and intent (Penal Code, § 31); and it was essential in this case for the State to prove the criminal intent. It does not follow, however, that an indictment would be void because it fails expressly to allege the criminal intent. If the indictment employs language from which it must necessarily be inferred that the criminal intent existed, it would be sufficient. The indictment in the present case is in the language of the code, and expressly charges that the accused did embezzle, steal, secrete, and fraudulently take and carry away the money described in the indictment. This was sufficient. The word "embezzle" itself sufficiently indicates the criminal act. 2 Bishop's Criminal Law, § 379. The word "steal" implies a felonious taking. No person can embezzle or steal the property of another without having the intent to appropriate the property to his own use, and the conversion of another's property by embezzlement or theft amounts to a criminal taking. See 7 Words & Phrases, "Steal." Indeed it has been held that the word "steal" implies not only a felonious taking, but also the carrying away of the goods, and that the use of the word "steal" in an indictment dispenses with the necessity of alleging that the goods were fraudulently taken and carried away. See State v. Mann, 25 Ohio St. 668; State v. Parry, 48 La. Ann. 1483 (21 So. 30); State v. Boyce, 65 Ark. 82 (44 S. W. 1043); State v. Fitzpatrick, 9 Houst. (Del.) 385 (32 Atl. 1072); People v. Lopez, 90 Cal. 569 (27 Pac. 427). Here, however, the indictment expressly alleges that the money was stolen, and that it was taken and carried away by the accused. This was sufficient.

2. Complaint is further made that the court erred in failing to charge the jury that there must have been a criminal intent, and erred in refusing to charge that the money must have been taken with intent to steal. The trial judge charged the jury in the language of the indictment and of the statute, that before they could convict they must be satisfied beyond a reasonable doubt that the accused did embezzle, steal, secrete, and fraudulently take and carry away the money described in the indictment. As we have seen, this amounted to an instruction that the money must have been taken with an intent to steal. The judge might, with propriety, have given the charge requested, but his failure to do so is not cause for a new trial. Whether the failure to give such an instruction would, in any case, be ground for a new trial need not be decided,

but it will not, under the evidence in this case, authorize a reversal of the judgment overruling the motion for new trial.

3. The other grounds of demurrer need not be discussed at length. When examined in the light of the allegations in the indictment, it will be apparent that none of the grounds are meritorious. The plaintiff in error contends that section 186 of the Penal Code is not as full as the statute from which it was codified. See Cobb's Digest, 795, § 127. The only substantial difference we can perceive is that the codifiers have separated embezzlement by a public officer and embezzlement by a person employed in a bank or other corporate body, and have brought within the general description of "money, paper, book or other property or effects" various species of property mentioned in the statute. So far as the essential elements of the offense are concerned there is no material difference between the statute and the code section. It was expressly alleged in the indictment that the accused was the cashier of the bank, that as such cashier he was in possession of the money, that he came into possession of it by virtue of his employment, that as such cashier he took the money, and that the bank was incorporated under the laws of Georgia. The indictment contains all the essential averments and was not subject to any of the grounds of demurrer. See *Jackson* v. *State*, *76 Ga.* 551; *Carr* v. *State*, 10 *Ga. App.* 21 (72 S. E. 516); *Mangham* v. *State*, 11 *Ga. App.* 427 (75 S. E. 512); *Trueheart* v. *State*, 13 *Ga. App.* 661 (79 S. E. 755). The grounds of demurrer attacking the constitutionality of the statute are not argued in the brief, except by a general statement that all of the grounds are insisted on. Even if this can be treated as an argument of these grounds, the questions raised are too well settled to make it necessary to certify them to the Supreme Court. Undoubtedly the legislature may constitutionally classify as a separate offense larceny from a corporation by a servant thereof, and such a law would not, within the purview of the constitution, be a special law in a case for which provision had been made by the general larceny statute. Section 186 is itself a general law, operating alike on all persons within the classes with which it purports to deal.

4. In our opinion the evidence demanded the conviction of the accused. It showed that he had confessed to the embezzlement to different persons and at different times, and had pointed out to

these persons the manner in which he had been able to falsify entries in the books so as to deceive the officers of the bank and the bank examiner. He showed the assistant State bank examiner how he had "loaded" the adding-machine used by the bank, so as to falsify the bank's records. The confession of the accused was abundantly corroborated by proof that the money went into his hands as cashier and was unlawfully appropriated by some person. It further appears that the manipulation of the adding-machine in the way pointed out by the accused in his confession brought about the result which he claimed. Furthermore, the false entries in the bank's books, which the accused admitted that he made, were put in evidence; and when accused of the crime he turned over to the officers of the bank property amounting to some $1,500. The proof shows that he embezzled from the bank a sum exceeding $7,000. In his statement the accused does not deny that he took the money, nor that he made the confessions which were testified to by the witnesses. The only attempt at denial, contained in his statement, is to the effect that during a portion of the time within which the money was taken he had illness in his family and was in great mental distress, was away from the bank for some days at the time, and really did not know what was taking place, and it was impossible for anybody to tell just what the situation was. The proof against the accused called for a more explicit denial than this. It is true the accused seeks to explain the bank's condition by saying the officers of the bank were continually overdrawing their accounts, and while, by innuendo, he attributes the bank's condition to these acts of the officers, he nowhere in his statement expressly denies that he embezzled the money described in the indictment, or any part of it. Even if it be granted that his statement was sufficient to authorize the conclusion that the accused did not get as much money as he was charged with having stolen, there is really nothing in his statement which would have justified the jury in finding that he was not guilty of having taken and used at least some of the money which he was alleged to have stolen. The evidence absolutely demanding the verdict of guilty, it is wholly immaterial what the trial judge charged or what he failed to charge.

5. During the argument of the case to the jury, counsel for the accused asked the jury, in the event they found a verdict of guilty, to recommend punishment as for a misdemeanor, and while making

this request counsel stated that the accused had already suffered much for his alleged offense, and was stating the length of time he had been in jail; whereupon the trial judge interrupted counsel and stated in the hearing and presence of the jury that such argument as to the length of time the accused had been in jail was improper, and compelled counsel to desist from such argument. It is argued that, inasmuch as the jury had the right to make such a recommendation, counsel should have been permitted to make any argument to the jury which, in his opinion, would have influenced them to recommend. We think counsel would have the right to use anything in the evidence or the statement of the accused which counsel might think would tend to influence the jury to recommend a mitigation of punishment. But counsel has no more right to discuss facts not in evidence, for the purpose of inducing the jury to make the recommendation, than for the purpose of persuading them to return a verdict of not guilty. For neither purpose has counsel the right to discuss facts which are not in evidence and are not alluded to in the prisoner's statement. There was not in the evidence or in the prisoner's statement anything in reference to the length of time the accused had been in jail; and for this reason the trial judge did not abuse his discretion in compelling counsel to desist from his argument. *Brown* v. *State,* 60 *Ga.* 210, 212.

6. Complaint is made also as to a number of questions which the trial judge propounded to one of the witnesses. It is contended that these questions were so framed as to amount to an expression of opinion by the court, and that the examination by the judge tended to prejudice the accused. The judge certifies that he examined the witness because the matter about which he had previously testified was not clear to the court, and the questions were asked in order to arrive at the truth of the matter. It is the right of a trial judge, in the interest of truth, to propound questions to a witness, but this right should be carefully exercised, in order to see that the questions are so framed as not to contain any intimation or expression of opinion on the part of the judge in regard to the innocence or guilt of the accused. New trials have been ordered by this court on several occasions where questions propounded by a judge were such as to indicate a belief that the accused was guilty. See *Joiner* v. *State,* 12 *Ga. App.* 217 (77 S. E. 9), and cases cited. The questions propounded by the judge in the present case were

not, however, subject to this criticism. They were pertinent to the issues on trial, and were so framed as not to contain any intimation of the judge's opinion in reference to the guilt of the accused. If the accused was prejudiced by the examination, it was only because the testimony brought out tended to show his guilt, and not on account of any impropriety of the judge.

7. Complaint is made also of certain remarks made by the trial judge when sentence was imposed upon the accused. It is contended that in these remarks the judge indicated that the accused ought to have entered a plea of guilty, and that his punishment ought to be more severe because of the fact that he had put the State to the expense of a trial. The record was made up when the judge began to impose sentence, the guilt of the accused had been established, and nothing the judge could say could alter this fact. The matter of punishment, within the statutory limits, was absolutely within the judge's discretion. His remarks after verdict are not subject to review in this court, and we will not undertake to determine whether the quantum of punishment to be imposed ought to be affected by the fact that one plainly guilty elects to stand upon his legal rights and require the State to establish his guilt beyond a reasonable doubt. This is a matter about which there might well be two opinions; but under no circumstances will a verdict of guilty be set aside because of remarks made by a trial judge in imposing sentence upon the accused. *Gaskins* v. *State,* 12 *Ga. App.* 97 (76 S. E. 777).

8. The only point in the case which has given us any trouble is the one which we are now about to discuss. The evidence shows that the secretary of State issued a certificate of incorporation to the Bank of Crosland, upon evidence that it had a minimum paid-up capital stock of $15,000 in cash. This certificate was in the usual form, and recited that the incorporators had filed a declaration in writing, praying to be incorporated for the purpose of doing a general banking business with a capital stock of $25,000, that they had complied with all the requirements of the act of the General Assembly, as appears from the declaration filed by them and certified by the ordinary of the county, and therefore that they "are a body politic and corporate, under the name and style designated in the declaration, and that such corporation has the capacity and powers conferred, and is subject to all the duties and liabilities im-

posed by law." It appears that under this certificate the bank organized by the election of officers, began to do business in the year 1907, and continued to do business up to the time of the embezzlement by the accused, in 1912 and 1913. Only $12,500 of the capital stock had been paid in cash, $2,500 being represented by notes of the incorporators which had not been paid at the time of the embezzlement. It was contended that the bank was not an incorporated bank, and that for this reason the conviction must fail for want of proof of a material averment in the indictment. The bank was authorized to do business under the provisions of section 2262 et seq. The code provides that persons desiring to form a banking corporation shall file with the secretary of State a declaration in writing, showing certain things. This declaration must be accompanied by the affidavit of the subscribers, verified by the ordinary of the county, that "$15,000 of the capital subscribed has been actually paid by the subscribers and that the same is in fact held and to be used solely for the business and purposes of the corporation." This declaration and affidavit must be published in the official organ of the county once a week for four weeks, after having been so published the ordinary shall certify the fact of such publication, "and upon said certificate being filed by the subscribers in the office of the secretary of State, he shall issue to the subscribers, their associates and successors, a certificate of incorporation under the seal of the State, certifying that 'the subscribers, their associates and successors, are a body politic and corporate under the name and style designated in the declaration, and that such corporation has the capacity and powers conferred, and is subject to all the duties and liabilities imposed by law.'" Civil Code, § 2265. We need not discuss the law in reference to corporations created by a superior court. The question for decision turns upon the construction of the law for the incorporation of banks.

It is contended by the accused that the bank was never legally incorporated, and that the incorporators would be liable to creditors as partners. Even if it be conceded that the incorporators would be so liable, it does not follow that the accused can collaterally attack the certificate of incorporation. Corporations have been divided into three classes,—corporations de jure, corporations de facto, and corporations by estoppel. A corporation de facto is one exercising corporate powers under color of a more or less legal

organization. The term "corporation by estoppel" is applied where a person who has contracted or otherwise dealt with a body purporting to be a corporation, is, by reason of having dealt with it as such, estopped from denying its corporate existence or the legality of its organization. See *Brown* v. *Atlanta Railway & Power Co.,* 113 *Ga.* 462 (39 S. E. 71). We need not stop to inquire whether the accused, having accepted employment as cashier of the bank, presumably by appointment, and certainly by the acquiescence, of the board of directors, with knowledge that the bank was acting as a corporation and was organized as such, would be estopped to collaterally bring in question the legality of the organization. Certainly the bank was a corporation de facto. It was acting under a certificate of incorporation granted by the secretary of State after a strict compliance with all the requirements of law. It organized as a corporation by electing officers and proceeding to do business. If the bank was not operating under at least color of authority, it would be difficult to conceive how any bank could be a de facto corporation. But besides all of this, we do not think the legality of the corporation was open to collateral attack at all. It is true the law requires the minimum capital of $15,000 to be paid in cash for the protection of the bank's creditors, but whenever a declaration for incorporation of a bank in terms of the law is filed with the secretary of State, and this declaration is accompanied by the affidavits of the incorporators and the certificate of the ordinary of the county, that at least $15,000 has been paid in cash, and the declaration and the affidavits are published as required by law, the law makes it the duty of the secretary of State to issue a certificate of incorporation. We do not say that if he had evidence of the falsity of the affidavits he would not have the right to refuse to issue the certificate. He has the right, however, to accept as conclusive these affidavits; and if he does so and issues a certificate of incorporation, the State alone would have the right to go behind the certificate and set up the illegality of the corporation. A certificate of incorporation, issued by the secretary of State under the statute, amounts to a declaration by the State itself that the incorporators are a body corporate, clothed with the powers of a banking corporation. and that they have met all the conditions precedent necessary to the issuance of the certificate. If the incorporators have perpetrated a fraud upon the State, only the State can complain; it is no concern

of a private individual having business dealings with the corporation as a legal entity. Undoubtedly the State could revoke the certificate, but whenever a banking institution presents a certificate of incorporation issued by the State after compliance with the precedent requirements of law, the bank is a corporation as against every one except the State, even though the incorporators may not have paid in cash the minimum amount of capital stock required by law.

These views find support in the case of Palmer v. Lawrence, 3 Sandf. 162, wherein it was held, "A certificate made and filed for the purpose of organizing a banking association under the general banking law, if in conformity with the terms of that act, is evidence of the truth of the facts that it recites, and is consequently evidence that the provisions of the statute have been complied with, and that the company was duly organized. From the time that such certificate is made and filed and recorded, the association becomes a corporation, or quasi corporation, under the statute, possessing all the privileges and competent to exercise all the powers that the statute confers. And from that time every person is precluded from denying its legal or corporate existence in any suit or controversy whatsoever." In the opinion it was said: "If there were any illegality or fraud in its organization,—if, from inadvertence or design, any of the material facts set forth in the certificate were untrue,—the association may undoubtedly be dissolved by the action of the sovereign power of the State; but as between the company and individuals, no evidence of such illegality or fraud can be given, in order to invalidate its certificate and disprove its legal existence or title; no individual who had dealt with the company is permitted to say that it had no authority to contract and no capacity to sue." See also 4 Thomp. Corp. (2d ed.), § 4737. In *Brooke* v. *Day,* 129 *Ga.* 694 (59 S. E. 769), it was held, "Where several persons unite to form a corporation, apply for and obtain a certificate of incorporation, inaugurate and conduct the business described in the application for incorporation in the corporate name, and contract a debt in behalf of the corporation during the course of the business, they will not be held liable as partners by reason of a defective organization as a corporation."

*Judgment affirmed. Russell, C. J., dissents.*

## ON MOTION FOR REHEARING.

RUSSELL, C. J.  A rehearing is asked upon the ground that this court overlooked the assignment of error wherein complaint is made that the judge erred in imposing sentence without giving the accused, or his counsel, an opportunity to exercise the right of polling the jury.  It is insisted that the point is controlled by the ruling in *McCullough* v. *State,* 10 *Ga. App.* 403 (73 S. E. 546), and that for this reason the trial court erred in overruling the motion for a new trial.  There is a clear distinction between that case and the case at bar, resting on the fact that in the instant case there was manifestly a waiver of the right to poll the jury.  It is true that at the precise time when the court inquired whether counsel waived the poll of the jury the inquiry was inopportune, but the inquiry itself was enough to call the attention of counsel to the right to have the jury polled, and did not tend to prevent the accused from exercising this right after the verdict should have been read.  The court probably intended to inquire whether counsel waived the "call" of the jury, instead of whether they waived the "poll" of the jury.  The "call" of the jury before receiving the verdict is a means provided by law for ascertaining whether the membership of the jury which is about to return the verdict is the same as that chosen at the beginning of the trial, and to ascertain whether all of the jurors who were selected are present.  The right to have the jury called to answer to their names provides a means of verifying the identity of the jurors originally selected.  Naturally this right must be exercised before the verdict is published by being read.  The right to poll the jury is given as a means of ascertaining whether the finding, which has been reduced to writing and signed by the foreman, and which has been read, is in fact the individual verdict of each and every member of the jury; and for this reason the poll of the jury comes after the verdict, while the call antecedes it.  If the court inadvertently asked if the "poll" of the jury was waived, when it was apparent that such an inquiry was premature because the verdict had not been announced (as well as because the polling of the jury is a right which is usually accorded only when asked), counsel should either have remained silent, because the question was not at that time a proper one, or else should have inquired of the judge if he did not, when he asked that question, intend to ask whether the "call" of the jury was waived; but having waived the

poll of the jury, in response to the inquiry of the court, submitted in that form (at least in the absence of any explanation as to why the waiver was made), the waiver must be held to be binding. Where a poll of the jury is waived, it is immaterial whether the waiver was before or after the verdict was rendered. Instances may be imagined where the right of polling the jury might be waived merely to accommodate the convenience of counsel, even before the jury retired to consider their verdict, and in such a case it would be none the less a waiver, and the court would have the right to act upon it as such.