20900. YORK *v.* THE STATE.

DECIDED JANUARY 14, 1931.

*Walter A. Sims,* for plaintiff in error.

John A. Boykin, solicitor-general, J. W. LeCraw, E. A. Stephens, William Schley Howard, contra.

BLOODWORTH, J. The record in this case is voluminous, containing an indictment in six counts, five grounds of demurrer, exceptions pendente lite on four rulings, a motion for a new trial containing fifty-two grounds, and other things, the whole making a record of about three hundred type-written pages. Some of the pleadings contain reiterations of issues raised elsewhere and otherwise in the record. Each assignment of error has been carefully considered, but we do not deem it necessary to discuss in detail each issue raised, and, therefore, only our rulings in headnotes 1, 25, and 35 will be elaborated upon. We hope the headnotes covering the other assignments of error will make each of them clear and understandable.

Harry York and Jack White were indicted jointly, and, upon an election to sever, York went to trial. Each count of the indictment charged the offense of bribery. No evidence was submitted upon the 6th count of the indictment, and the court directed the jury to return a verdict in favor of the defendant on that count. The five counts upon which the defendant was tried are in substance as follows: The 1st count charges that the accused "did unlawfully directly and indirectly receive of and from Carling L. Dinkler the sum of $6500.00 in money as a reward given to accused by the said Dinkler for procuring and taking part in the acceptance by the general council of the City of Atlanta of the proposal submitted to said council by the Carling Hotel Company for lease for 65 years of the real estate known as the 'Old City Hall property,' on which property the city hall of the City of Atlanta was then and there located; said payment and receiving of money being done in pursuance of an agreement whereby the said Dinkler did offer to give to accused a sum of money as great as the above-stated sum for the accused to procure the acceptance by the said general council of the said proposal; the said purpose including as a part thereof the influencing of the official behavior of one of accused, to wit, Harry York, who was then and there a member of the said general council, in that the matter of accepting or not accepting

the said proposal of the Carling Hotel Company was depending before the said general council, and the purpose of the said offer and agreement to pay said reward was in part the influencing of the behavior of the said York in the matter of voting upon the said acceptance and in the matter of opposing or not opposing the acceptance of said bid in the official deliberations of said general council; the said York being then and there a legally qualified councilman of the City of Atlanta, a municipal corporation. . ." The 2d count charges that the accused received from Hugh Richardson $1500 as a reward to procure an appropriation by the general council for cutting off or tearing down a building. The 3d count charges that the accused received from C. A. Pittman $1000 as a reward for procuring an appropriation by the general council to pay a claim of the said Pittman. The 4th count charges that the accused received from F. A. Pittman $425 as a reward for procuring an appropriation by the general council for settlement of damage to a building. The 5th count charges that the accused received from Wagar & Company $500 to influence the behavior of York in the matter of letting of contracts by the city. All these counts allege that the said York was then and there a legally qualified councilman and member of the general council of the City of Atlanta. To each count the accused demurred and the demurrer was overruled.

1. The 1st ground of demurrer alleges that no crime, no intent, and no joinder of act and intent is alleged. The allegations of the indictment sufficiently charge the crime of bribery as defined in § 270 of the Penal Code of Georgia. While intent is an essential element to the commission of a crime, and there can be no crime without "a union or joint operation of act and intention or criminal negligence" (Penal Code, § 31), yet where the indictment alleges an "offense," and names and describes the offense in terms of the penal statute, and alleges that the act was "unlawfully" committed, and that it was "contrary to the laws" of the State, and employs language from which it must necessarily be inferred that the criminal intent existed, it is not void because it fails to *expressly* allege the criminal intent. *Cason* v. *State,* 16 *Ga. App.* 820, 822 (86 S. E. 644) ; *Shehany* v. *Lowry,* 170 *Ga.* 70 (152 S. E. 114).

The 2d ground of demurrer alleges that count 1 of the indictment is void because the contract with the city referred to therein

was for more than a year and void. The subject of investigation before the trial court was not the validity of this contract. The issue formed on this count of the indictment was whether the accused received a bribe for procuring the acceptance by the council of Mr. Dinkler's proposal. The gravamen of the offense is the defendant's receiving a bribe to influence his official conduct. In 9 C. J. 405, the general rule is stated that "An official act need not be lawful to render the officer liable, but need only be official in form, and done under color of his office. Thus *it is not necessary, in order to constitute bribery, that the vote of the public official bribed shall be on a measure which can be enforced.*" (Italics ours.) See numerous authorities cited in footnotes 38 and 39 to this section. In State *v.* Lehman, 182 Mo. 424, it was held that "It is not necessary, in order to constitute bribery, that the vote of the public official bribed should be on a measure that is valid and can be enforced." In State *v.* Ellis, 33 N. J. Law, 102, it is held that the "offense of bribery is complete when offer of reward is made to influence the vote or action of an official, although in a matter not within the jurisdiction of the officer."

The 3d ground of demurrer contends that the indictment alleges no crime because "the law of bribery in this State does not extend to a member of the city council of Atlanta." Was it the intention of our General Assembly, in passing the statute in reference to bribery, to exclude from its operation a councilman charged with a public trust, whose official conduct largely affects the public weal, and permit him to accept money to influence his official conduct, and yet not be guilty of this offense? Does not the same rule that applies to the State in this matter apply to any body politic or subdivision of the State? Section 270 of the Penal Code of Georgia provides that "Bribery is the giving or receiving of any undue reward to influence the behavior of the person receiving such reward, in the discharge of his duty in *any office of government* or of justice." (Italics ours.) The fact that the statute says "any office," and then adds immediately thereafter the words "of government or of justice," shows that it was the intent of the law-making body to make the act broad enough in scope to cover any governmental or judicial office in this State; and the intent of the law-making body is a vital consideration in construing a statute. It is undisputed that the defendant held an "office" as a member of the

city council of Atlanta, and unquestionably a city council is a governmental body which passes ordinances and exercises other governmental functions. The fact that certain officers of the city perform ministerial acts in no wise controverts this truth. Counsel for plaintiff in error cites the case of *Payne* v. *State,* 153 *Ga.* 882 (113 S. E. 446), in support of his contention on this issue. We can not agree with this insistence of the plaintiff in error. The effect of the Supreme Court's ruling, as it relates to the question now at issue, is that § 270, defining bribery generally, refers to *"any* office of government or justice," and § 271 refers to specified officers of the State, and to arbitrators who may act in matters pertaining to the State or to a municipality thereof; and also provides for the punishment for bribery; and that, "construing these two sections together," the court is "of the opinion that § 271 provides a penalty for the offense of bribery as defined in *both* these sections." (Italics ours.) Statutes must be upheld if it can be done reasonably and lawfully; and any construction other than that adopted by our Supreme Court would have rendered § 270 void and unenforceable, as it has no penalty except as provided in § 271. The decision in the *Payne* case also holds that "The office of a policeman of the City of Atlanta is embraced in the expression 'office of government or of justice' within the meaning of § 270 of the Penal Code of 1910;" and that a city policeman, in addition to coming under § 270, also comes under § 271, which refers to an "officer of the State." Councilmen are elected under a provision of municipal government, but they are elected, as stated in the *Payne* case, *"under legislative authority* authorizing the creation of those" municipal governments, "and *therefore* they come within the meaning of 'office of government or of justice' and 'officer of this State' within the meaning of the sections of the Penal Code now under review." In short, § 270 refers to *"any* office of government or of justice," and § 271 refers to an "officer of this State" and others, and the Supreme Court held that a city policeman came under *both* sections. Nowhere in the *Payne* case is it held that bribery applies to State officers only. And this ruling of our Supreme Court is in accord with rulings in other States. In People *v.* Jaehne, 103 N. Y. 182 (8 N. E. 374), it was said: "It would seem, moreover, that there could be no general policy upon which an omission of municipal officers from the provisions of the general statute against

bribery could proceed. The cities of the State embrace a large share of its population and wealth. Municipal governments exercise by delegation, within a limited sphere, and under certain restrictions, sovereign power. They create debts binding upon the municipality, and wield the power of taxation. The danger to which public rights and private property is exposed from dishonest municipal administration is certainly as great as from corruption on the bench or in the legislature. It is inconceivable that a bribery statute of *general application* [such as one referring to *any* office of government] should be enacted which did not embrace bribery of municipal officers. . . The general bribery act not only covers the whole subject, but was we think plainly intended to furnish the only rule governing the crime and punishment of bribery. . . The crime of bribery is not local, affecting only a particular locality. No matter in what place the crime is committed, or whether by a town, city, county or State officer, it is an offense in the punishment of which the whole public are interested. It is peculiarly a crime against society at large. It impairs public confidence in the integrity of official administration, a confidence most necessary to be maintained. It is impossible to suppose that the legislature, when it enacted the Penal Code, intended to exempt officials in the City of New York from the operation of the bribery sections. No public policy can be assigned for such a discrimination. . . It is the duty of courts in construing statutes, to avoid, if possible, a construction which leads to absurdity. . ." In State *v.* Ellis, 33 N. J. 104, it was said: "If in the case now before us it was no crime for the defendant to offer, it would have been no crime for the councilman to accept the bribe. The result would, therefore, be that votes of members of council on all questions coming before them could be bought and sold like merchandise in the market. *The law is otherwise.*" In People *v.* Swift, 59 Mich. 530 (6), it was held that "Sections 9241 and 9242, How. Stat., punishing bribery in the case of '*any* executive, legislative, or judicial officer,' applies as well to municipal as to State officers, the character of whose duties fall within any of these definitions, and a construction which would take cities and other corporations out of the protection of these laws *would be dangerous and unnatural.*" And in the body of the opinion, p. 544, the court said: "The words apply, in our opinion, just as well to local as to State functionaries, the

character of whose duties falls within any of these definitions. Under our system of local self-government, there is no public corporation that has not an organic connection with the State, or which does not require guarding to promote the interest of the whole body politic." The general statute on bribery in Georgia embodies the words "any office." In *Amundson v. State,* 28 Ohio Cir. Ct. R. 655 (4 Am. Dig (2 Dec. ed.) 169), it was held that "The words 'other officer,' as used in the statute covering bribery, must be extended to include members of the council of a municipality." In 9 C. J. 406, it is said: "The modern definition of bribery, whether statutory or otherwise, commonly includes as the subject of it all persons whose official conduct is in any way connected with the administration of the government, general or local, whether judicial, legislative, executive, or ministerial; and persons who execute the functions of a public office or who hold any place of profit or trust under any law of the State. These words executive, legislative and judicial are meant in their broadest sense, and are intended to embrace every officer in the State, whether State, county or municipal." Clearly our bribery statute is applicable to members of a municipal council.

Paragraph 4 of the demurrer contends that there is a misjoinder of offenses. As shown by the counts hereinbefore set out in substance, "each act charged is a different transaction, but of the same general nature, and the indictment was so framed that the jury could, if the evidence so authorized, legally acquit the defendant on some of the counts and convict him on others," and in such a case several misdemeanors may be joined in one indictment. *Bulfin v. State, Tooke v. State,* and *Lynes v. State,* supra; *Sutton v. State,* 124 *Ga.* 815 (53 S. E. 381) ; *Westfall v. State,* 4 *Ga. App.* 834 (62 S. E. 558).

Paragraph 5 of the demurrer reiterates the contention of paragraph 4 and contends further that the defendant should not have been forced to trial on the six cases at one time. The same contention is urged in a motion to require the State to elect one count and one transaction. If there was no misjoinder, as has been ruled, ante, then no election of counts would be required. To permit them to be joined in one indictment necessarily means that they can be tried under one indictment. See *Lynes v. State,* supra; *Memmler v. State,* 75 *Ga.* 576; *Walker v. State,* 118 *Ga.*

772 (45 S. E. 621). The court did not err in overruling the demurrer.

25. Ground 32 of the motion for a new trial alleges that the court erred in refusing to grant a motion for a mistrial because of a reprimand by the court of the witness White while on the witness stand. The judge certifies, in his order overruling this ground of the motion for a new trial, that "the situation presented by the witness Jack White was unique. He seemed to be excited, and he talked very fast and in a loud tone of voice. He bluntly declined to be guided in his testimony by the questions of counsel or the rulings of the court. At one time counsel for the defense ceased trying to interrogate him and sat down. The court endeavored to confine his testimony to the issues of the case, and believes that the jury so understood the remarks of the court and were not prejudiced against the defendant nor otherwise harmfully affected by them." In using the language upon which the motion for a mistrial was based, the judge was not addressing the jury but was addressing Jack White. The ground shows that the judge used the following language in ruling upon the motion for a mistrial: "Now, gentlemen, he doesn't know the law of evidence. I say he isn't acquainted with the law nor the custom of the court. He has been insistent about having his own way. That isn't in accordance with the rules of the court, and the court has had to speak frankly to him; but that should not in any way influence you in trying this case. The court asks that you be not influenced, and the court knows you will not be. . . Do not let it discredit his testimony or influence you in any way at all in your deliberations or as it relates to the defendant." In *Scarborough* v. *State,* 46 *Ga.* 26, 33, Judge McCay said: "The only practicable rule is to treat the jury as possessed of common sense and as capable of understanding what is addressed by the judge to them and what is not. He may not express to the jury any opinion, but if in the decision of any legal question, as it arises, he must pass upon facts, the statute does not apply. It must be reasonably construed." See, in this connection, *Croom* v. *State,* and *Butler* v. *State,* supra. The refusal to declare a mistrial was not error.

35. Ground 49 alleges that Judge Humphries, the trial judge, was disqualified, and that counsel for accused did not know it until after the trial. The ground of disqualification alleged was that

Joseph W. Humphries, a brother of the judge, was a member of the "City Club," which "contributed from its treasury to a fund raised by what is known as a citizens' committee to aid the solicitor-general of the City of Atlanta in the investigation and prosecution of this case and other cases known as the 'graft cases' in the City of Atlanta." The evidence fails to show that Joseph W. Humphries or the City Club contributed to any fund for the prosecution of the defendant; but even had this allegation been supported by proof, this would not require the grant of a new trial. Section 2642 of the Civil Code is as follows: "No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission, can sit in any cause or proceeding in which he is pecuniarily interested, or related to either party within the fourth degree of consanguinity, or affinity, nor of which he has been of counsel, nor in which he has presided in any inferior judicature when his ruling or decision is the subject of review, without the consent of all the parties in interest: Provided, that in all cases in which the presiding judge of the superior court may have been employed as counsel before his appointment as judge, he shall preside in such cases if the opposite party agree in writing that he may preside, unless the judge declines so to do." In *Luke* v. *Batts,* 11 *Ga. App.* 783 (3) (76 S. E. 165), citing *Elliott* v. *Hipp,* 134 *Ga.* 844 (68 S. E. 736, 137 Am. St. R. 272, 20 Ann. Cas. 423), this court held: "The statutory grounds of the disqualification of a judicial officer as contained in the Civil Code, § 4642, are exhaustive." See, in this connection, *Long* v. *State,* 25 *Ga. App.* 22 (102 S. E. 359); *Hewitt* v. *State,* 27 *Ga. App.* 676 (3), 677 (109 S. E. 679), and cit.; *Hennon* v. *State,* 33 *Ga. App.* 600 (1), 601, and cit. Under the foregoing authorities, the trial judge was not disqualified. The evidence supports the verdict, and the record discloses no reversible error.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*