## 21714. MARTIN v. THE STATE.

DECIDED NOVEMBER 11, 1931.

*W. R. Bentley,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw, W. Schley Howard,* contra.

LUKE, J. The indictment in this case charges Jack Martin with the offense of bribery, "for that said accused, in the County of Fulton and State of Georgia, on the 15th day of September, 1929, . . being then and there an assistant license-inspector of the City of Atlanta, a municipal corporation, and it being provided by lawful ordinance of the City of Atlanta that it was his duty as such to examine into licenses granted by the city from time to time, and to perform all other duties relating to licenses required of him by the tax committee of General Council of the City of Atlanta under supervision of the Clerk of Council of said city; and it being part

of his duties as such inspector to investigate all businesses conducted on Edgewood Avenue, in said city, between the street numbers of 300 and 500 on said Edgewood Avenue, and to see that all such businesses in said district had the proper license tax imposed upon them as provided by the tax ordinance of the City of Atlanta, and that such license taxes were collected from the persons operating such businesses in the said district and paid into the treasury of the City of Atlanta; said part of his duties as above outlined being established (a) by usage and custom in the department of license inspection as in vogue and established under the supervision of the Clerk of Council, and (b) by the authority and instruction of the tax committee of the General Council of the City of Atlanta; did unlawfully receive of and from J. C. Shaw a reward and bribe as follows: The said Shaw did withhold from collecting and enforcing against said Martin a bill which the said Shaw had and held against said Martin in the sum of $118 for four Fisk-automobile tires, 33 by 4-1/2 inches, and four inner tubes to fit the same, which the said Martin had previously bought from the said Shaw, doing business as Shaw Tire Service, and which the said Martin had agreed to pay for on installments, the said Martin agreeing to make payments on said bill during every month until the said bill of $118 was paid, and the said Shaw withholding the said collection of said bill and withholding the collection of any installments on the said bill; and the said withholding of the collection of said bill and the installments thereof constituting a reward and bribe which was so received by the said Martin to influence his official behavior in his said office as inspector above set forth, in the following respects, to wit: to influence him, the said Martin, not to enforce against the said Shaw . . a license tax which was imposed by the tax ordinance of the City of Atlanta upon all persons, firms, and corporations doing business of selling automobile tires in the City of Atlanta at retail, which license tax was $18.75 per quarter as provided by the said tax ordinance, and to influence the said Martin as such inspector not to report to his superior, the Clerk of Council of the City of Atlanta, Walter C. Taylor, the fact that the said Shaw was conducting the said tire-selling business on Edgewood Avenue in the said district in which it was the duty of the said Martin to investigate such businesses and such license matters as aforementioned, and which fact that the

said Shaw was so conducting the said tire-selling business in the said district on Edgewood Avenue was known to accused, and to influence the said Martin not to cause the said license tax to be collected from the said Shaw for his said tire-selling business which the said Shaw was so conducting; and all the said acts of accused herein set forth were and are contrary to the laws of said State . .; it being also the duty of said Martin as such inspector to prefer a charge of 'doing business without a license' in the recorder's court of the City of Atlanta against any person in his said district whom he discovered to be doing any business without paying the license provided by said tax ordinance, and a part of the purpose of the bribe above set forth being to influence his conduct not to make or prefer any such charge against said Shaw for doing his said business without a license, which business was conducted by said Shaw without any such license being issued him by the City of Atlanta to conduct business of selling automobile tires at retail; the said Martin being a special officer of the City of Atlanta with power to make arrest and prefer charges in such matters as the foregoing, as provided by lawful ordinance of the City of Atlanta."

The jury found the defendant guilty, and the court sentenced him to pay a fine of $250 and labor on the public works for eight months. Broadly stated, the questions for decision here are: (1) whether the trial judge erred in overruling the demurrers to the indictment, and (2) whether he erred in overruling the motion for a new trial.

On March 10, 1931, two separate demurrers were filed, and on the same day these demurrers were separately overruled. The first demurrer appearing in the record is as follows: "1. Defendant demurs generally to said indictment on the ground that no criminal act on the part of the defendant is set out in said indictment against defendant. 2. Defendant demurs to said indictment further on the ground that said indictment is not correct in form and is not drawn according to law." We have set out the material parts of the indictment fully in order that it might speak for itself. We are satisfied that the indictment is good as against the first paragraph of the foregoing demurrer. Obviously the second paragraph presents nothing for the consideration of this court.

The second demurrer is as follows: "1. Defendant demurs to

said indictment, and that part of said indictment which reads: 'to see that all such businesses in said district had the proper license tax imposed upon them as provided by the tax ordinance of the City of Atlanta and that such license taxes were collected from the persons operating such businesses in the said district and paid into the treasury of the City of Atlanta; and said part of his duties as above outlined being established (a) by usage and custom in the department of license inspection as in vogue and established under the supervision of the Clerk of Council, and (b) by the authority and instruction of the tax committee of the General Council of the City of Atlanta,' for the reason that these duties were no part of defendant's duties, but on the other hand were duties of the marshal of the City of Atlanta, and not the duties of license inspectors, and these duties could not have been established by usage and custom in the department of license inspection, nor by the authority and instruction of the tax committee of General Council of the City of Atlanta and as set out in City Code."

As we understand it, the gist of the foregoing demurrer is that the alleged duties of the defendant were not his duties at all, but were the duties of a particular official, to wit, the marshal of the City of Atlanta. The demurrer alleges new matter, not disclosed by the indictment which it attacks, and which is not judicially known or legally presumed to be true. Therefore the demurrer is "speaking," and presents nothing for the consideration of this court. *Miller* v. *So. Ry. Co.,* 21 *Ga. App.* 367 (3-*a*) (94 S. E. 619). See also *Jackson* v. *State,* 64 *Ga.* 344, 347; *Tate* v. *State,* 24 *Ga. App.* 279 (2) (100 S. E. 765) ; *Woodard* v. *State,* 18 *Ga. App.* 59 (1-b) (88 S. E. 825).

■ .We come next to the general grounds of the motion for a new trial. Certified copies of various sections of ordinances of the City of Atlanta were introduced in evidence. By section 1798 the office of license inspector was created. Section 1799 provides: "It shall be the duty of said inspector to examine into all licenses granted by the city, . . to perform all other duties required of him by the tax committee." Section 1800 provides: "Said inspector shall be vested with power to prefer charges, and make arrest of all parties violating the law of the city, and shall take the oath required of special policemen, and have the right to wear the badge of same." Section 1801-A reads: "The office of assistant

license inspector is hereby created, charged with all the duties of the regular license inspector, but subject thereto. . ." A certified copy of the following ordinance, adopted and approved in December, 1922, was also introduced in evidence: "Section 1. Be it ordained . . that whereas the license inspector and his assistant now perform their duties under the Clerk of Council and that official is held responsible for their services to the city but has not authority to appoint said officials; therefore, be it ordained that at the expiration of the terms of office of the present license inspector and his assistant that the Clerk of Council be and is empowered to appoint a license inspector and such assistants as may be provided by the Mayor and Council." The State also introduced in evidence certain sections of the tax ordinance of the City of Atlanta for the fiscal year 1929-1930, being the year ending June 30, 1930. Suffice it to say in regard to these sections that it appears from them that the defendant was required to register his business, procure a license for the same, and pay for said license a stipulated amount.

After swearing that he was engaged in the automobile-tire business as alleged, J. C. Shaw testified in part as follows: "Mr. Martin always delivered us our licenses—notice of licenses when they were due. The license was always handled through the mail. I always sent a check in through the mail. Mr. Martin was the man who came there to inspect—the only man that looked after licenses at all. . . I couldn't say definitely how long before May 6, 1929, he had been coming there, but for some time,—I would say a year or two, or something like that. I let Mr. Martin have some 33 by 4-1/2 automobile tires, for which this is the bill— $118. . . He agreed to pay $20 as an initial payment within the next few days . . or at his next pay-day. . . I agreed to that. Then he was to pay every two weeks. $20 was the down payment. He hasn't paid that yet. He was to pay $15 every pay-day. On these conditions I delivered him the tires . . May 6, 1929. . . The payments were due and were not paid. . . I first called him over the telephone at the city hall and discussed the matter with him. . . He told me over the telephone that he had had . . sickness in his family, and that was the reason he hadn't taken care of the payments. . . I told him that my licenses were due and had to be paid, and he said . . he would take care of the licenses

—$18.75 a quarter; and at that time there was a quarter due. He told me he would take care of them for me, and would take care of the rest just as quick as he could, and bring it up to date. Then after several weeks had elapsed . . I ran into Mr. Martin on Piedmont Avenue . . and I asked him about my licenses, and told him that they had not been mailed to me, and he told me that he had taken care of my licenses all right. He said, 'I will see about them when I go back.' Up to that time of that telephone conversation I had not gotten my licenses. I hadn't paid any license at the time of the conversation on Piedmont Avenue; I hadn't gotten my licenses. Then I went to his house after another license inspector had been out to see me. When the other inspector came around it took $112.50 to straighten me up through the present quarter. All during the time the licenses were running up to $112.50 I was depending on Mr. Martin to send me my licenses. . . I was depending on Mr. Martin to take care of my licenses as he had agreed to, and I presumed he was taking care of them. I quit getting notices about my licenses. It was customary that I get a notice each quarter. . . Nobody came to ask me about it until finally a man came and demanded $112.50 by reason of these lapses. After Mr. Story came to collect the money out of me I went down to see him (defendant) and asked him why he hadn't taken care of me as he agreed, and he said he had had a whole lot of bad luck. . . He said he was in bad shape right at that time . . and that he would go up and get it all arranged the next day and let me hear from him right away; but I didn't hear from him any more. He promised to take care of the whole matter. . . He has not done so yet. I didn't come down and inquire further about it because I just figured I had already made arrangements and it was being taken care of—that he had already made the necessary arrangements. Yes, after the conversation on Piedmont Avenue, I kept sending him bills. When I went to see Mr. Martin at his house on Gibson street, I told him what Mr. Story told me—that Mr. Story came in there and we were discussing the licenses, and I explained to him that I thought my licenses had been paid, and I was dumbfounded that they were not. . . Well, I went to see Mr. Martin a day or two after Mr. Story came to see me, . . told him that I had discovered about the licenses—that they had informed me that I was marked off of the books up at the

city hall as 'quit business;' and he says, 'I don't know how that happened, but I haven't got anything to do with . . that end of it up there.' . . I have never been out of business, but had been continuously in business for about ten years, and had been on Edgewood Avenue since 1926. It was about October, 1926, I went to the present place, . . it was during the fall of last year that Mr. Story came to see me. . . I think it was somewhere along in October. Yes, Mr. Martin told me in the conversation I had with him at his house on Gibson street that he would take it up with Mr. Tatum, who had succeeded Mr. Taylor as clerk. He said he would go up there and get it arranged and take care of it for me, but he didn't do it. . . I don't remember that the marshal of the City of Atlanta ever served a fi. fa. for taxes on me . . Mr. Martin, while inspecting and collecting licenses, never made any case against me for nonpayment of any of these licenses, or served me with notice to appear before the recorder for nonpayment of taxes. If this paper be called a fi. fa. it was never served on me by any person."

J. J. Stoy testified in part: "I am an inspector of the license department of the city. There are five inspectors. They work under the city clerk. ·. . I was not an inspector while Mr. Martin was in the service. I came on July 15, 1930, and was told that I succeeded Mr. Martin. . . I checked up on the place of business of Shaw Tire Service. . . When I went to Mr. Shaw's place I did not find a license on the wall. . . I found no difficulty in ascertaining that there was no license there. . . I think the last license was paid for the last quarter of the fiscal year 1929,—no, it was the third quarter; March 31st was the last license. That was in 1929. . . I gave him notice . . of intention to make a case against him in the police court unless he paid it. . . I understood it was my duty to make a case if he didn't pay. To the best of my recollection, it was around a week after I gave the notice before it was adjusted. . . These places I refer to are in Fulton county, Ga."

Deputy Clerk Oscar H. Williamson testified in part: "The license inspectors all work directly under the city clerk, each having certain territory to work on. I can't say exactly what territory was assigned to Mr. Martin in July, 1929, and up to the time he left the service, but I think he worked most of the north side of

Atlanta, which included Edgewood Avenue." James L. Wells testified in part: "I was a member of the City Council of the City of Atlanta in 1929 and 1930, and was a member of the tax committee. . . That committee received reports with reference to the uniformity of business licenses. In 1929 and the first part of 1930 those reports were made by Mr. Taylor as the city clerk and chief license-inspector. I don't know the exact number of assistant license-inspectors. We had quite a number. The duties of the license-inspectors, under the supervision of the head license-inspector and the tax committee, were to go out and investigate licenses, to see whether or not they were paid, whether or not everybody was paying a license as required by law. When they found a place of business that didn't have a license, they reported it to the head license-inspector, the city clerk, and to enforce the payment of licenses. They were required to take them into the recorder's court if thy failed to pay the license. The tax committee made no change with reference to their duty to enforce the payment of license taxes. The system we had was that the clerk appointed all the assistants, and they were all called his assistants in the license work." E. L. Barnes, who had been associated with the city clerk for more than twenty-five years, swore in part: "The duties of an inspector, as I understand them, is to canvass the places of business to see if they have the proper license or any license at all, and, if he has no license, to inform the merchant he must obtain a license, and, if he doesn't obtain a license, to report it to the city clerk, and if he fails to pay the license a fi. fa. must be issued against the place of business; and the inspector has the right, as I understand it, to make a case for refusing to pay license, and have it tried in the recorder's court." There is much other evidence in the case, but the foregoing fairly presents the main features of the State's case. The gist of the defendant's statement was that he bought the tires from Shaw as alleged, and had not paid for them because of sickness in his family, but that he was not guilty as alleged in the indictment. We think that the evidence sustains the verdict, and therefore hold that the trial court did not err in overruling the general grounds of the motion for a new trial.

■ ▪ It appears from the first special ground of the motion for a new trial that J. C. Shaw swore, over objection, as follows: "I

was depending on Mr. Martin to take care of my license as he had agreed to, and I presumed that he was taking care of them." The objection interposed to this testimony was: "I object to any presumption he had." The trial judge admitted the testimony "as a part of the history of the case." If, as sworn by the witness, Martin agreed to "take care of" his license, we see no reason for reversing the judgment because the witness testified also that he was depending upon Martin to do as he promised, and presumed that he was so doing. Moreover, the same witness gave substantially the same evidence in another part of his testimony without objection. See *Chapman* v. *State,* 28 *Ga. App.* 107 (3-a) (110 S. E. 332). We hold that this ground discloses no reversible error.

■ Special grounds 2 and 3 complain of the overruling of certain objections to questions propounded to the witness J. C. Shaw. "No error is shown by a mere refusal to exclude a question." *York* v. *State,* 42 *Ga. App.* 453 (9) (156 S. E. 733). Furthermore, what answer was made to either question does not appear from the ground. Neither of these grounds presents any question for the determination of this court.

■ It is very difficult to pass intelligently upon the fourth special ground without reference to the brief of evidence, for the reason that this ground contains several questions and answers interspersed with colloquies between the court and counsel. However, we gather from the ground that the witness J. C. Shaw was allowed to testify that Mr. Story called up the city hall by telephone from Shaw's place of business, and that "they" informed Shaw that he "was marked off of the books at the city hall as 'quit business.'" The objection was that the testimony was hearsay. After the introduction of the foregoing testimony, the witness Oscar H. Williamson Jr., a deputy clerk of the City of Atlanta, testified, without objection, that Shaw's business was marked off the records at the city hall as "quit business," and that he was the person making that entry. In view of this fact, the admission of the testimony objected to would not in any event be cause for reversing the judgment. See *Patterson* v. *State,* 17 *Ga. App.* 341 (2) (86 S. E. 782) ; *Chapman* v. *State,* supra; *Terry* v. *State,* 15 *Ga. App.* 108 (3) (82 S. E. 635).·

■ The fifth and last special ground is based upon alleged newly discovered evidence. The nature of the evidence appears from the

affidavits of the defendant and T. H. Leathers. The substance of the two affidavits being the same, we deem it sufficient to refer to only one of them. The gist of the defendant's affidavit is that after his conviction in this case, J. C. Shaw, in the presence of T. H. Leathers, the new witness, told affiant that he, Shaw, did not swear that he gave the defendant said tires as a bribe to "withhold collections," and that if he, Shaw, did so, "it was not true;" that Shaw further told affiant on that occasion that the "license was never mentioned in the transaction;" and that Shaw said also to affiant in the presence of said Leathers: "I consider that you owe me the money, because I did not give you the tires as a bribe, and did not withhold the collections of any payments as installments as a bribe, because the tires were sold to you on open account."

The entire design of the alleged·newly discovered evidence appears to be to discredit the witness Shaw, and evidence which is purely impeaching in its nature is generally not ground for a new trial. It will be observed in this connection that Shaw did not testify in so many words that he bribed the defendant, but merely swore to a state of facts that strongly led to that conclusion. We do not think that it can be fairly concluded that the alleged newly discovered evidence would probably produce a different verdict upon another trial of the case, and we hold that there was no reversible error in overruling this ground. See *Oglesbee* v. *State,* 25 *Ga. App.* 750 (*a*) (105 S. E. 51); *Butler* v. *State,* 42 *Ga. App.* 471, 472 (156 S. E. 644).

In conclusion we hold that the demurrers to the indictment were properly overruled, and that the court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*