48422. CAULEY v. THE STATE.
48423. WOODS v. THE STATE.

280

Submitted September 4, 1973 — Decided November 9, 1973 — Rehearing denied November 26, 1973 —

*Martin, Davidson & Kilpatrick, Frank K. Martin,* for Cauley.
*Grogan, Jones & Layfield, John C. Swearingen, Jr.,* for Woods.
*E. Mullins Whisnant, District Attorney,* for appellee.

Eberhardt, Presiding Judge. Defendants in these two felony cases were jointly indicted, jointly tried (Code Ann. § 27-2101), and convicted for selling "drugs of abuse" (amphetamines) (Code Ann. § 79A-901 et seq.). Defendant Cauley raises the identical points of law made by defendant Woods, and these issues will be considered together in Division 1. Separate issues raised by Cauley will be dealt with in Division 2.

■ *Issues common to both appeals.*

■ Before trial defendants filed a challenge to the poll based upon prejudicial remarks[1] concerning rules of the Board of

---

[1] It was alleged in the challenge to the poll that after the jury had returned its verdict in the prior case the judge, noting the punishment which the jury had fixed, remarked that under its rules the Pardon and Parole Board would probably release the defendant within about a month. The remark had been made in the courtroom so that the jury and any others present could hear

Pardons and Paroles made by the court at the conclusion of a preceding trial. The challenge was directed to the twelve jurors who served on the preceding trial as well as all the other jurors who were present in the courtroom at the time the remarks were made. Defendants requested that those jurors be excused and that additional jurors be drawn to bring the panel up to 48. The court sustained the challenge as to the twelve jurors who sat on the preceding trial, which left 53 jurors on the panel. Additionally, eight other jurors who were present in the courtroom and had overheard the remarks were excused by the court "for cause." This left 45 jurors on the panel, and defendants enumerate as error the failure of the court to allow them a full panel of 48 qualified jurors from which to select a traverse jury.

The law appears to be clear that prior to July 1, 1973, a defendant in a felony case was entitled to have 48 qualified jurors put upon him prior to the time he was required to begin striking. Code Ann. § 59-801; *Britten v. State,* 221 Ga. 97, 99 (3) (143 SE2d 176).[2] A challenge to the poll is the proper procedure to be followed to disqualify jurors on the ground that the trial judge had made a prejudicial remark in their presence. *Hill v. State,* 221 Ga. 65 (1, 2) (142 SE2d 909). A challenge to the poll is one peremptory or for cause, addressed to an individual juror (*Humphries v. State,* 100 Ga. 260, 262 (28 SE 25)), while a challenge to the array is a challenge or objection to all of the jurors collectively because of some defect in the panel as a whole, such as, for example, that the names of the jurors were drawn from the grand jury box (*Pollard v. State,* 148 Ga. 447 (4) (96 SE 997)), or were not drawn in open court (*Blevins v. State,* 220 Ga. 720 (3) (141 SE2d 426)), or some other reason running to the whole of the panel.

There was no challenge to the array such as is provided for in Code § 59-803: "The accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled, or ought not to be put upon him; the sufficiency of which challenge the court shall determine at once. If sustained, a

it. Cf. *McKuhen v. State,* 216 Ga. 172 (5) (115 SE2d 330); *McKuhen v. State,* 102 Ga. App. 75 (2) (115 SE2d 625); *Berry v. State,* 107 Ga. App. 643 (131 SE2d 115).

[2]Ga. L. 1973, p. 286, effective July 1, 1973, struck former Code § 59-801 in its entirety and enacted a new § 59-801 providing for the impaneling of 42 jurors in felony cases. The instant case was tried in February, 1973.

new panel shall be ordered; if not sustained, the selection of jurors shall proceed."

"If the panel does not contain the requisite number of jurors when it is put upon the defendant, the law prescribes, in Penal Code § 972 (now Code § 59-803), his sole remedy, — he may challenge the array. If he does not challenge the array, no other method of complaint as to the deficiency of the panel is open to him." *Ivey v. State,* 4 Ga. App. 828, 831 (62 SE 565). See also *Williams v. State,* 31 Ga. App. 173 (3) (120 SE 131). The objection is waived unless properly challenged. *Williams v. State,* 210 Ga. 665, 667 (82 SE2d 217).

The state contends that a full panel was put upon the defendant when it had 65 jurors in it, and that the excusing of 20 of them pursuant to challenges to the poll by the defendants did not result in putting on them a panel less than that required by Code Ann. § 59-801. The trial court agreed. Without deciding this issue it is sufficient to point out that there was no written challenge to the array, and thus that the mere oral objection raised by defendants before beginning the process of selection that the panel was deficient in number, raises no issue that we can decide. The oral objection or complaint was not open to them. *Porch v. State,* 207 Ga. 645 (2) (63 SE2d 902); *Thompson v. Buice,* 162 Ga. 556 (2) (134 SE 303). A jury was in fact selected from the 45 jurors left on the panel after sustaining the challenges to the poll, and defendants were denied no strikes.[3] The enumeration is without merit.

■ Defendants moved to suppress, inter alia, "all testimony" which might be forthcoming at the trial as a result of police eavesdropping, without an investigation warrant (Criminal Code § 26-3004), on certain telephone conversations to which defendant Cauley was a party. Insofar as the motion to suppress is directed at anticipated testimony, rather than "property" (Code Ann. § 27-313), the motion was properly overruled since a motion to suppress under Code Ann. § 27-313, which is the sole authority for such a motion, does not lie under these circumstances. *Baker v. State,* 230 Ga. 741, 742 (1) (199 SE2d 252). See also the discussion in *Reid v. State,* 129 Ga. App. 660 (200 SE2d 456). However, the motion also seeks to suppress "any evidence including any sums of money" used in the transaction, and since money must be considered as "property" under Code Ann. § 27-313, we will

---

[3] See Code Ann. §§ 79A-9915, 59-805, 27-2101.

attempt to follow defendants' arguments with respect to the motion to suppress considered in this division of the opinion. Criminal Code § 26-3006 provides: "Nothing in section 26-3001 shall prohibit the interception, recording and divulging of a message sent by telephone . . . in those instances wherein the message shall be initiated or instigated by a person and the message shall constitute the commission of a crime or is directly in the furtherance of a crime, provided at least one party thereto shall consent." A hearing was held on the motion to suppress to determine whether the overhearing of the conversations fits within this section.[4]

From the evidence adduced it appears that the police in Columbus had been receiving information about drugs being illegally sold by defendants from their place of business, the Benning Park Pharmacy, for some period of time. During the course of their investigation the police had gained the cooperation of one Walter Williams who had been involved in the drug traffic around the pharmacy, buying drugs illegally from defendants for his employer's brother, and Williams consented for police officers to listen in on calls he made to Cauley at the pharmacy. As a result of overheard calls thus made by Williams on August 11 and 12, 1972, an illegal sale of amphetamines was arranged for and consummated for which defendants were convicted. No complaint is made here that the calls made on these dates and testified about at the trial by Williams without objection were illegally overheard. As pointed out above, the motion to suppress does not reach such testimony and since no objection was made to it when introduced, no complaint could now be made. *Reid v. State,* 129 Ga. App. 660, supra. Rather, defendants argue that the trial court erred at the hearing on the motion to suppress in not allowing similar inquiry into an overheard telephone call made on August 3, 1972, in order to determine who made the call to the pharmacy and whether the caller consented to the police overhearing it as provided in Code Ann. § 26-3006.

We find no reversible error. The convictions resulted entirely

---

[4]A constitutional attack on Criminal Code § 26-3006 was made below but has been abandoned. Appellants treat this section as constituting the standard by which to measure the legality or illegality of the police eavesdropping, and for purposes of this appeal we accept their standard.

from the illegal transaction arranged for by the telephone calls made on August 11 and 12. The call of August 3, while made during the course of the police investigation, was not material to this trial and no evidence as to it was introduced.

Defendants, however, rely upon Wong Sun v. United States, 371 U. S. 471 (83 SC 407, 9 LE2d 441) and contend that "any information gained as a result of the conduct of the police officers on the date of August 3, 1972 tainted any evidence which was gained as a result of this 'fruit of the poisonous tree.' " However, the United States Supreme Court stated in that case: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U. S. 487-488.

Assuming illegality in the overhearing of the August 3 call, since appellants were not allowed to pursue their § 26-3006 inquiry with respect to this call, it is our view that other evidence, including the money used in the transaction and recovered from the pharmacy pursuant to a search warrant, was not derived from an exploitation of the August 3 call but instead by means sufficiently distinguishable to be purged of any taint attaching to that call. As Detective Frazier, who overheard the conversations, testified on cross examination by defendants: "Q. Now, getting back to the conversation on the 3rd of August, that is when you really — after you heard—overheard that conversation is really when you intensified your investigation in regard to the matter here before the bar? A. No, sir, not intensified, just continued. Q. Had you gained any meaningful information? A. Yes, sir." From a consideration of the record as a whole, it is quite clear to us that the officer's statement was correct and that the recovery of the marked bills from the pharmacy was not the result of exploitation of the call on the 3rd, whoever may have made it and whatever its contents may have been. The entire illegal transaction was set up by the calls on the 11th and 12th, which Williams allowed the police officers to overhear as provided for in Criminal Code § 26-3006, and about which Williams testified at the trial without objection. Accordingly, we find no error in the refusal of the trial court to make inquiry into the legality or illegality of police activity with regard to the conversation of August 3 or in the overruling

of the motion to suppress.

Defendants contend that the trial court erred in denying their motion to suppress evidence (marked bills used in the illegal sale for which defendants were convicted) gathered as a result of a search of the Benning Park Pharmacy pursuant to a search warrant. It is urged that some of the information which the police officer relayed to the magistrate in the affidavit as probable cause for the issuance of the warrant was obtained as a result of eavesdropping on the August 3 call which the court had refused to allow counsel to inquire into as complained of in 1(b) above. It is also urged that the officer made no showing of reliability of an informer.[5]

The portion of the affidavit relevant to these complaints is as follows: "On 3 August 1972 the deponent had a police employee go to the Benning Park Pharmacy with unwitting informer and purchased two hundred (200) amphetamines, at a cost of $225 for said two hundred (200) tablets. Information from reliable source received subsequent to his transaction indicates that Buddy Cauley received a substantial portion of the $225."

Assuming arguendo that this portion of the affidavit should be stricken, the following portions which remain are sufficient to establish probable cause for the issuance of the warrant: "On this date [August 11, 1972], a transaction of illegal drugs was made in the Benning Park Pharmacy. Arrangements were made by telephone with a subject named Buddy. Buddy is known to the deponent as Buddy Cauley. The deponent believes that a portion of the monies spent for the drugs will remain on the premises. At 4:50 p.m. 11 August 1972, Officers Cooper and Durrah observed Walter Williams enter the Benning Park Pharmacy and give a roll of bills to a colored male who in turn went to the rear of the store, through a curtain doorway to a rear office. Williams was told to return later and pick up the drugs." Defendants seek to destroy this portion of the affidavit by urging for the first time on appeal that no transaction involving illegal drugs did in fact take place on August 11th at the pharmacy. While it is true that the drugs were delivered to Williams at defendant Woods' home on the 12th, it is clear from the affidavit and the evidence that the transaction was well in progress on the 11th. This factual inaccuracy does not destroy the otherwise adequate showing of probable cause in the

---

[5]The motion to suppress did not include this ground.

affidavit. *Summerville v. State,* 226 Ga. 854 (1) (178 SE2d 162). We know of no requirement that police officers must await the final consummation of illegal activities before obtaining search warrants.

■ Defendants contend that the court erred in failing to require the district attorney to disclose any promise of leniency which had been offered by the state to Williams. The record is clear that no such promise was made, and no error appears.

■ *Separate issues raised by Cauley.*

■ Cauley complains of the failure of the trial court to instruct the jury that they should draw no inference against him because he made no statement, sworn or unsworn. A proper written request to so charge was submitted by Cauley but refused by the court, and error is enumerated thereon. At the completion of the charge Cauley objected and insisted that the jury should be recalled and the requested instruction given because codefendant Woods had made an unsworn statement and the court had charged on the right of a defendant to make an unsworn statement as provided for by Code Ann. § 38-415.[6]

We find no harmful, reversible error. "Where the defendant has not made a statement in his own behalf, it is not proper for the court to give in charge section [38-415]. Unless the reference to the defendant's right to make a statement occurs in such connection as to leave the jury to infer that his failure to make one is to be counted against him, the error stands upon a like footing to that which arises ordinarily when a court gives in the charge some principle of law, abstractly correct but not pertinent to the facts in the case. Whether such an error is reversible or not depends almost entirely upon the facts and circumstances of each particular case. In the present instance the proof of the defendant's guilt is very satisfactory; no other errors are complained of; it is not likely that any material prejudice was done the defendant by the court's inadvertence; therefore the error is deemed harmless." *Carter v. State,* 7 Ga. App. 42 (65 SE 1090), followed in *Williams v. State,* 81 Ga. App. 748, 750 (2) (59 SE2d 743), where a new trial was sought "because the court erred in charging the jury relative to a defendant's statement, on the ground that since the defendant made no statement the court should have charged

---

[6]Effective July 1, 1973, the unsworn statement law was abolished. Ga. L. 1973, p. 292.

the jury that the defendant had a right not to make a statement in the trial of his case; that he did not make one was not to be considered by the jury as prejudicial to the defendant; that the failure to make a statement should not have any influence on the jury in its deliberations in reaching a verdict; that the failure to charge on this point was prejudicial and harmful to the defendant, the charge being contrary to law, and denied to the defendant his right to a fair trial."

For purposes here we see no distinction between the situations where (1) a sole defendant makes no statement, the court nevertheless charges on unsworn statements but omits to instruct that failure to do so should have no influence or authorize no inference (*Carter* and *Williams,* supra), and (2) where a defendant makes no statement but his codefendant does, the court charges on unsworn statements but omits to give the "no inference" charge (the instant case). In the latter and instant situation, the court is required to charge on unsworn statements since one was made by the codefendant, while in the former it is error to give the charge since no statement was made. Even in the former situation, however, the giving of the unsworn statement charge and the omission of the "no inference" charge were held in the cited cases to be harmless error under the circumstances.

This is not a proposition unique to this type situation. " 'The evidence is overwhelming that the defendant is guilty, and where such is the case, even errors in the admission or rejection of testimony, or in the charge of the court, will not operate so as to require a new trial.' *Hagar v. State,* 71 Ga. 164, 166; *Seyden v. State,* 78 Ga. 105 (4). 'The evidence demanded the conviction of the accused, and it was therefore immaterial what the judge charged or failed to charge the jury.' *Cason v. State,* 16 Ga. App. 820 (4) (86 SE 644); *Williams v. State,* 15 Ga. App. 311 (82 SE 817); *Usry v. State,* 17 Ga. App. 268 (2) (86 SE 417); *Bernolak v. State,* 18 Ga. App. 7 (2) (89 SE 302); *Miller v. State,* 24 Ga. App. 354 (2) (101 SE 197); *Cherry v. State,* 38 Ga. App. 388 (144 SE 50); *Pierce v. State,* 41 Ga. App. 498 (1) (153 SE 434); *Hall v. State,* 45 Ga. App. 519 (2) (165 SE 466); *Kennedy v. State,* 51 Ga. App. 543 (181 SE 139). This applies to the denial of a request to charge. *Usry v. State,* supra.' " *Pennington v. State,* 117 Ga. App. 701, 704 (161 SE2d 327). Since the harmless error principle applies to the denial of a request to charge, any intimation which might be thought to arise from *Dixon v. State,* 224 Ga. 636, 638 (163 SE2d 737) or from *Ivy v. State,* 220 Ga. 699, 705 (141 SE2d 541), with regard to failure to give the

particular charge requested here does not require a different result.

With these principles before us, we need only observe that the charge as to the unsworn statement actually given had reference only to Woods' statement, since only Woods made a statement and the court also charged in general that the instructions he would give applied to each defendant separately as applicable; the charge did not occur in such a connection as to lead the jury to believe that they should infer that Cauley's failure to make one should be counted against him; and the evidence, related in other portions of this opinion, is overwhelming as to Cauley's guilt and demanded his conviction.

That there may be harmless error — even harmless constitutional error — where it did not adversely affect substantial rights of the defendant, as we find the case to be here, is well settled. Fahy v. Connecticut, 375 U. S. 85 (84 SC 229, 11 LE2d 171). Pointing out that all fifty states have harmless error rules, and that one is found in 28 USC § 2111, the Supreme Court in Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705, 24 ALR3d 1065), refused to adopt a rule that constitutional errors, regardless of the facts and circumstances, must always be deemed harmful, but, instead, asserted that if the appellate court, after reviewing the record, is able to declare its belief that the constitutional error was harmless beyond a reasonable doubt, no reversal should result. The error claimed here is one of procedure only and does not rise to the constitutional level, but if it did we should nevertheless find it to be harmless under these rules. The existence of error alone does not require a reversal — it must have been harmful. *Dill v. State,* 222 Ga. 793 (152 SE2d 741).

" 'A defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials.' Lutwak v. United States, 344 U. S. 604, 619 (73 SC 481, 97 LE 593); Bruton v. United States, 391 U. S. 123, 135 (88 SC 1620, 20 LE2d 476); Brown v. United States, 411 U. S. 223 (36 LE2d 208)." *Sanford v. State,* 129 Ga. App. 337 (199 SE2d 560).

Accordingly, we find no harmful, reversible error here.

■ Cauley complains that the trial judge should have disqualified himself in regard to the challenge to the poll of the jurors who overheard his alleged prejudicial remarks. It is urged that the judge should not have been allowed to pass upon the legality of his own comments. It does not appear that the judge was

disqualified under the standards of Code Ann. § 24-102. However, even if he were, since the court held that his remarks were in fact prejudicial and excused the jurors who overheard them, no reversible error appears. This ruling was favorable to the defendant. Cf. *Bivens v. Todd,* 222 Ga. 84, 85 (1) (148 SE2d 424).

■ Prior to trial Cauley made a motion for severance, praying that he be granted a separate trial, alleging that he had a conflicting and different defense to that of codefendant Woods, that Woods was not going to make a sworn statement and that Cauley would be denied his Sixth Amendment right to confrontation and cross examination. At the hearing on the motion, it developed that Cauley's counsel had originally represented both defendants; that he learned that Woods had given a confession to police officers inculpating Cauley; that because of this conflict he had to withdraw as Woods' counsel, other counsel being obtained for Woods; and that Woods' counsel intended that Woods would make an unsworn statement and not be subject to cross examination under the unsworn statement law. It was thus Cauley's contention that if the motion for severance was not granted, and the confession was introduced into evidence, he would be denied the right of confrontation and cross examination guaranteed by the Sixth Amendment to the United States Constitution. The motion for severance was denied.

At the trial the confession, which inculpated Cauley, was admitted into evidence over Cauley's continuing Sixth Amendment objection. When the state rested, the objection was again made, to which the trial court responded by instructing the jury not to consider Woods' confession as bearing upon Cauley's guilt. Woods then took the stand and made the following unsworn statement: "I am Walter K. Woods. I am a former school teacher. I had to resign from teaching school because I was very ill. I resigned in February. At the time I was working in the drug store, I was under psychiatric treatment. I was carried down to Police Headquarters and I was threatened by several officers. I asked if I could go to the bathroom — they told me no. I asked to be taken to the hospital for medication — they denied that. One of the detectives wrote something down and asked me to sign it. I was under pressure, and I signed the statement, not knowing the contents of the statement. I was there from 1:30 until 5:30 being pressured. I did not receive any pills from Mr. Cauley, nor did I have any money. Concerning Mr. Williams came in the drug store and purchased some beer with a twenty-dollar bill, and he asked

me to give him change for a hundred-dollar bill. That is the way that the money was put into the drug store. And afterwards, I was threatened several times, and I want to make it crystal clear that I did not sell any pills, nor did Mr. Cauley sell the pills. I have no knowledge about the pills; I do know about the money — the hundred dollars and the twenty-dollar bill. I was a Sunday School teacher and Recording Steward of my church and a member of the Jaycees, but because of my illness, I had to give up all of these things. Somebody said I worked at Benning Park Pharmacy. At the time I resigned from school, I was indebted to Benning Park Pharmacy, and I was taking psychiatric therapy. To keep from staying at home, much of my time was spent there at the Benning Park Pharmacy. I am not guilty of selling drugs of abuse, and Mr. Cauley is not guilty of such, and that's my statement." Cauley requested that he be permitted to cross examine Woods with regard to the confession, but the court refused to permit it on the ground that he had previously instructed the jury it could not be used against Cauley and that Woods, in his unsworn statement, exculpated rather than inculpated Cauley. Cauley enumerates as error the denial of the motion for severance, and the denial of his right to confront and cross examine Woods with respect to the confession.

In Bruton v. United States, 391 U. S. 123, supra, which overruled Delli Paoli v. United States, 352 U. S. 232 (77 SC 294, 1 LE2d 278), the United States Supreme Court held that at a joint trial the admission into evidence of a nontestifying codefendant's confession, which inculpated the appellant being jointly tried with the codefendant, violated the appellant's Sixth Amendment right to confront witnesses against him, and further held that this encroachment on the appellant's constitutional right could not be cured by the formerly approved practice of having the trial judge instruct the jury to disregard the confession or statement in determining the innocence or guilt of every codefendant except the confessor himself.

However, in the subsequent case of Nelson v. O'Neil, 402 U. S. 622 (91 SC 1723, 29 LE2d 222) it was held that where a codefendant took the stand in his own defense, denied making the alleged out-of-court statement implicating the other defendant in the joint trial and claimed that the substance of the statement was false, and proceeded to give testimony favorable to the latter concerning the underlying facts then the other defendant had been denied no rights protected by the Sixth and Fourteenth Amendments. And

in Harrington v. California, 395 U. S. 250, supra, the Supreme Court applied the "harmless error" holding of Chapman v. California, 386 U. S. 18, supra, to a Bruton-type situation where at a joint trial, over an objection by a nonconfessing defendant, the confessions of two nontestifying codefendants and the confession of a third codefendant who did testify were introduced with limiting instructions that the jury was to consider each confession only against the confessor. In Harrington the court held that the Bruton violation, though error, was harmless beyond a reasonable doubt because the other evidence against the nonconfessing defendant amply supported his conviction, whereas in Bruton the court had stated that the introduction of the confession added "substantial, perhaps even critical, weight to the Government's case . . ." Accord: Schneble v. Florida, 405 U. S. 427, 432, supra, in which, relying upon Harrington, it was concluded that "the 'minds of an average jury' would not have found the state's case significantly less persuasive had the testimony as to [nontestifying codefendant's] admission been excluded. The admission into evidence of these statements, therefore, was at most harmless error."

Thus it has been held in a number of cases that although the Bruton rule was violated by the admission into evidence at a joint trial of a statement or confession made by a nontestifying codefendant implicating one or more of the other codefendants, the error was harmless where other evidence amply supported the other codefendants' convictions. See, e. g., Wapnick v. United States, 406 F2d 741 (CA 2); Stone v. United States, 435 F2d 1402 (CA 2) (admission of statements of nontestifying codefendants was "thin icing on a very substantial cake"); James v. United States, 416 F2d 467 (CA 5); Simpson v. Wainwright, 439 F2d 948 (CA 5); Ward v. Henderson, 317 FSupp. 344 (D. C. La.); United States v. Clayton, 418 F2d 1274 (CA 6); United States v. Brown, 452 F2d 868 (CA 6); Wooten v. United States, 307 FSupp. 80 (D. C. Tenn.) (aff'd per curiam, 420 F2d 376 (CA 6)); Alley v. United States, 426 F2d 877 (CA 8) (no merit to appellant's claim that he should have been granted a severance); Erving v. Sigler, 327 FSupp. 778 (D. C. Neb.); Clark v. United States, 412 F2d 491 (CA 9); Neal v. United States, 415 F2d 599 (CA 9); United States v. Davis, 418 F2d 59 (CA 9) (no error in failing to grant motion for separate trial); Robinson v. State, 229 Ga. 14 (189 SE2d 53); People v. Lucas, 48 Ill. 2d 158 (269 NE2d 285); State v. Swaney, 277 N. C. 602 (178 SE2d 399); State v. Camerlin, 108 R. I. 524 (277 A2d 291).

In the instant case, had Woods' statement at trial been under oath, no Bruton error would appear under the holding in Nelson v. O'Neil, 402 U. S. 622, supra, and a host of similar cases. See comment note at 29 LE2d 931. We can hardly imagine a less hostile witness than a codefendant who asserts that his confession inculpating complainant was coerced; that he did not know the contents of it; that the statement was false and at fatal variance with the true underlying facts; and that neither he nor complainant had committed the criminal acts for which he was being tried. Nor can we imagine that the most skilful cross examiner could have produced a better result for Cauley here than was voluntarily forthcoming in Woods' unsworn statement. Because the statement was unsworn, however, and subject to the now-abolished peculiarities of the unsworn statement law (Code Ann. §§ 27-405, 38-415, 26-401 (a)), we will assume Bruton error.[7]

In United States v. Morales, (5th Cir.) 477 F2d 1309, 1314, the issue was the denial of defendant's Sixth Amendment right of confrontation by the admission of a *confession* made by a nontestifying codefendant in which the defendant, Morales, was expressly charged with complicity in a conspiracy to sell a package of nonnarcotic substance (flour) to government agents under representation that it was heroin, thereby defrauding the government, and it was held error, as against Morales, to admit the confession, applying the rule of Bruton. If the confessing codefendant had taken the stand and by testimony denied any complicity of Morales, as was done in Nelson v. O'Neil, 402 U. S. 622, supra, or by an unsworn statement, as here, we apprehend that there would have been no reversal.

The question becomes, therefore, whether the error was harmful

---

[7]But see *Robinson v. State*, 229 Ga. 14, supra. From the record in that case it appears that codefendant Timms, who "denied in open court the facts contained in his purported confession [which implicated appellant Robinson], as well as its voluntariness," did so in an unsworn statement. However, it is not clear to us whether the court found no Bruton error under the holding in Nelson v. O'Neil, 402 U. S. 622, supra, which was cited, or whether any Bruton error was found harmless under Schneble v. Florida, 405 U. S. 427, supra, which was also cited. Since we find any Bruton error harmless under the circumstances here, we presuppose such error, though we might well have found no error under Nelson v. O'Neil.

requiring reversal, or harmless within the holdings in Harrington v. California, Schneble v. Florida, and the other cases cited supra. In summary, the evidence shows without dispute that on August 11, 1972, Walter Williams, cooperating with the police, made a telephone call to Cauley, the manager of the pharmacy, and placed an order for the illegal purchase of amphetamines. Detective Frazier then gave Williams $205 in marked bills with which to complete the purchase. Williams went into the pharmacy and gave the money to defendant Woods, who worked there, and told him that he wanted the pills, but was told by Woods that he would have to come back and get them. Woods took the money to the back part of the store where the cash register, office, etc. were located. Cauley was standing in the office door at this time. Later in the day Williams again called Cauley at the pharmacy and asked him if he had "the package," but was told by Cauley that "no, he wasn't there yet." The next morning Williams again called Cauley at the pharmacy and asked him if "the package got back" but was told by Cauley that Woods had not gotten back but was in bed at home with a hangover. Williams then went to Woods' home around noon to pick up the drugs, but was told that Woods had gone to the pharmacy. Williams then went to the pharmacy, saw Cauley and Woods, and told Woods that he wanted "the package." Woods stated that they would have to go to his house and get it. Woods and Williams proceeded in Williams' car to Woods' house, whereupon Woods went inside, got "the package" and gave it to Williams. Williams returned Woods to the pharmacy and gave "the package," which Williams testified contained yellow pills wrapped in cellophane, to Detective Frazier. The pills were subsequently analyzed and were found to contain both amphetamines and barbiturates. In the meantime Detective Frazier had obtained a search warrant for the pharmacy, and after receiving the pills from Williams the pharmacy was searched. The marked bills were recovered, a $100 bill being found in Cauley's desk drawer and a $20 bill in Cauley's billfold. These were the bills used in the transaction, identified by their serial numbers, the officers having made a record thereof prior to the transaction, and additionally by marks on them which they had made with a chemical pencil.

In view of this evidence, we can see no reasonable possibility that Cauley would have been acquitted had the alleged inculpating confession not been admitted, for his guilt was overwhelmingly established. We are hence compelled by the force and persuasiveness of the state's case to hold any Bruton error harmless beyond a resonable doubt.

■ Cauley complains that the court erred in denying his motion for mistrial because of an offer of "immunity" to the witness Williams by the court, relying upon Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LEd2d 104) and Napue v. Illinois, 360 U. S. 264 (79 SC 1173, 3 LE2d 1217). A reading of these cases discloses that in each of them there had been an *agreement or understanding between the prosecuting attorney and the testifying witness* that if he would testify for the government a recommendation of leniency, or of no prosecution, would be made.

First, we note that there was no such agreement here, nor is it contended that there was.

Secondly, the matter was invoked by counsel for the defendant as soon as the witness Williams was placed upon the stand by inquiring as to whether the court intended to allow the District Attorney to interrogate the witness while a grand jury investigation was pending against him, and particularly since the witness had not been advised of his Fifth Amendment rights, and was without counsel in the courtroom. At this point the judge ruled that in this situation the defendant could not be prosecuted later on account of any testimony which he might deliver upon the present trial.

The objection then raised by counsel for appellants was "the court has, on its own motion, given this witness immunity, and our objection is, number one, that there is no statutory authority in the State of Georgia to give any witness immunity, and the court, on its own motion doing it at this time would be, we feel, depriving Mr. Cauley [of] an impartial judge on the bench, because it would appear that by giving something to this witness which the law does not allow the court to do, that the court is assuming partially the function of the prosecutor, and we ask for a mistrial."

Assuming that the action and ruling of the judge amounted to the grant of "immunity" to the witness, we find no merit in the objections raised. We find no statutory provision touching the grant of immunity, but as was asserted in *Howard v. State,* 60 Ga. App. 229, 237 (4 SE2d 418), quoted approvingly in *Evans v. State,* 222 Ga. 392, 403 (150 SE2d 240): " 'The extension of immunity to a particeps criminis who has turned State's evidence has existed from time immemorial . . .' and 'such a promise affects only the witness to whom it is made. It is admissible insofar as it affects the credibility of the witness to whom immunity has been promised; beyond this it does not affect the defendant on trial.' " We know of no reason why the immunity cannot be extended by the court

as well as the prosecuting attorney, for it is in protection of the rights of the witness as well as to secure testimony in proof of the facts.

■ Nor do we see how the grant or extension by the court of the "immunity" to a witness in these circumstances results in a failure to have an impartial judge presiding over the trial. That the judge may have made a ruling or taken an action which is calculated to protect the rights of one who testifies does not have the effect of placing the judge in a partisan position. It is the duty of the judge to protect witnesses who appear in the trial; the concept of fair trial demands it. *Gore v. State,* 110 Ga. App. 344 (2) (138 SE2d 471).

Since the motion for mistrial was based upon these two grounds only, it was wholly without merit and it was proper to overrule it.

Moreover, since it was counsel for Cauley who raised the issue as to whether the witness should testify without having been informed of his Fifth Amendment rights and thus invoked the ruling, it would appear that he is in no position to complain of the ruling made. *Bennett v. Bennett,* 210 Ga. 721 (2) (82 SE2d 653); *Turner v. McGee,* 217 Ga. 769, 772 (1) (125 SE2d 36).

■ Error is enumerated on failure of the court to require the district attorney to disclose any promise of leniency which had been offered by the state to the witness Williams. This point was not raised in the trial court and raises nothing for decision here. *Morris v. State,* 200 Ga. 471, 481 (37 SE2d 345); *Aycock v. State,* 188 Ga. 550 (10) (4 SE2d 221); *House v. State,* 227 Ga. 257 (1) (181 SE2d 31); *Stevens v. State,* 228 Ga. 621 (1) (187 SE2d 281), and cits.

■ Thirdly, it appears that counsel for Cauley brought the matter out on cross examination of the witness before the jury: "Q. All right, when you testified this morning, and you were sitting in that chair, did you hear it said right here in court that you could not get in trouble for anything you said today? The Court: That wasn't said, Mr. Martin. I said that — the testimony was, I'm sure he heard it, was that any incriminating statement he made today would not be used in any subsequent prosecution — not that he couldn't get in trouble. Q. I'll rephrase it. Did you hear it said today that whatever you said out of your own mouth today would not be used against you later in another prosecution? A. Yes, I heard that — what's being stated here. Q. And you remember that, as you are testifying now, that that was said this morning, don't you? A. That was said this morning."

Assuming that the point now raised had been raised at the trial level — that the court did not require the district attorney to

apprise the jury of the matter — we can see no harm resulting, for the ruling was stated in the presence of the jury by the judge, the witness and, as well, by defense counsel. There can be no doubt that the jury had the information and could evaluate the witness' testimony in the light of it.

■ Fourthly, it appears that the witness was admittedly an undercover aide of the police in making the purchase of the drugs. He was not an accomplice who could be prosecuted for his actions with regard to this transaction, whether he had been informed of his Fifth Amendment rights or not. He was free to testify truthfully as to the facts without the promise of any immunity or of leniency, and such a promise, if made, would in no way change his position.

We agree that if there had been an understanding or agreement between the prosecuting attorney and the witness that in return for his testimony here immunity or leniency would be extended to him with respect to charges pending against him, that is a matter which would go to his credibility, about which the jury is entitled to know, and that in that situation a duty rests upon the state to inform the jury of the arrangement. *Allen v. State,* 128 Ga. App. 361 (196 SE2d 660). On cross examination defendant's counsel asked the witness whether he had received any threats of being turned over to the Federal government if he did not assist the state, and he answered that he had not; asked why he was not himself on trial, he answered that he did not know; and asked whether anybody had promised to "go easy on him" if he helped the state, he replied that "they have not." The issue of credibility was thus before the jury and the jury could not have been unaware that the witness had assisted the officers in making the purchases of drugs and was assisting the state by presenting his evidence. The situation here is much the same as appeared in *Morris v. State,* 228 Ga. 39, 47 (10) (184 SE2d 82), where a claim of error similar to that attempted to be raised here was held to be without merit. See also *Barnwell v. State,* 127 Ga. App. 335 (2) (193 SE2d 203).

■ Finally, Cauley contends that there was insufficient evidence to convict him of a felony because there was no corroboration of accomplice Williams' testimony. However, Williams was not an accomplice in the crime but was acting voluntarily in cooperation with the police. Even though there was, in fact, corroboration of Williams' testimony, it was not required. *Marshall v. State,* 98 Ga. App. 429, 433 (2) (105 SE2d 748).

*Judgments affirmed. Pannell and Stolz, JJ., concur.*