## 51778. SPIVEY v. THE STATE.

WEBB, Judge.

Jane Spivey was indicted for burglary, tried and convicted in the Superior Court of Murray County on June 18, 1975, and was sentenced to serve three years in the penitentiary. Her motion for new trial was overruled, and on appeal she enumerates two alleged errors, (1) that she was deprived of due process and a fair trial guaranteed by the Sixth and Fourteenth Amendments, and (2) the evidence did not establish her guilt beyond a reasonable doubt.

The state's brief was not filed until 36 days after the time for filing had expired. Our rules are equally applicable to district attorneys. "This court cannot demand per-

fect administration but does expect reasonable attention to the processing of cases, and particularly in the case of a criminal action fostered by the state against one of its citizens." *State v. Weeks,* 136 Ga. App. 637, 638 (222 SE2d 117). Here, however, we affirm the conviction and sentence.

Upon the trial the prosecution contended that Jane Spivey contacted an acquaintance, Larry Pack, to arrange the burglary of a mobile home belonging to her former husband L. D. Spivey. Two of the state's witnesses, Gary Loggins and Mike Shelton, were co-defendants who had previously pled guilty to the burglary. Gary Loggins testified that he was approached by Pack who told him "he knowed this woman that wants to rip this trailer off that belonged to her ex-husband, and said that she would pay us $500 to do it; and we could have all the stuff out of his trailer"; that at Pack's direction he and Mike Shelton and Russell Gearin drove to the Dalton area where they attempted to reach Pack by telephone; that they went to the home of Pack's sister, Janie White (Mrs. Spivey's sister-in-law), but Pack was not there; that Mrs. White called Mrs. Spivey who came to the house; and that Mrs. Spivey "told us about the trailer, that she wanted us to break into the trailer and steal the stuff, and she would pay us $500 to do it, and she mentioned something about shooting the man's legs off, and breaking into his TV shop and kidnapping him for two or three days."

Mike Shelton's testimony completely corroborated Loggins'. Both men also testified that Mrs. Spivey and Mrs. White led them to the trailer and waited at the intersection of the highway and the dirt road where the trailer was located until the burglary was completed. Subsequently they returned all the stolen items to the investigating officers.

Gearin and Pack did not testify. However, Edward McCumber of the Gordon County Sheriff's Department testified that he interviewed Pack while conducting an investigation of another burglary in Gordon County. At that time no one had been charged with or arrested for the burglary of the trailer of L. D. Spivey, nor had any of the stolen goods been recovered. The interview was recorded and transcribed and, over objection, was allowed in

evidence because Pack was unavailable to testify.

The state claimed that it made a diligent search for Pack prior to the trial. The evidence showed that Pack had been charged with the Spivey burglary and placed in the custody of the Murray County Sheriff's office, but released on an "own recognizance" bond before it was known that he had a criminal record of 28 arrests and 11 convictions. He was also on bond from Gordon County and a federal bench warrant for his arrest was outstanding. After the unsuccessful search of the county his name was placed on the "NCIC" network computer as wanted in Murray County.

The information volunteered by Pack to McCumber during the interview, as read to the jury by McCumber, was as follows: "At the conclusion of my talk with Larry Pack, my first statement was 'O.K., this is pretty well cleared up, you indicated that you have some information in reference to a burglary that happened out of this County, and you said you wanted to tell me about it because you felt it was an injustice what's going on here right now?' Pack said 'Yes sir, the same woman who has got a warrant for me paid two boys out of Atlanta to come up here and burglarize her ex-husband's trailer, and told them what they couldn't steal to tear up, and me and my wife is a witness on that, and my sister went with this woman out there, took the boys out there, and Jane and my sister Janie sat on a dirt road watching for the County Police, while these two boys burglarized the trailer, and they got a shotgun, a rifle, a pistol, a tape deck, a box full of tapes and two or three new sets of clothing that belonged to her husband. . . And he owns a TV shop in—what did I say the name was?' Then I said 'Chatsworth,' and he said, 'Yes, Chatsworth, he owns a TV shop up there.' Then I talked to him, I said, 'O.K. What you are saying in summary is that Jane Spivey and her husband are separated, is that right, and you mentioned to me before that she asked you to do her a favor, is that correct? 'Yes, sir.' 'What was the favor she wanted you to do? "She asked me if I could get someone to kill her husband,' and I told her I couldn't get nobody killed, but I would get somebody to shoot him, you know, to mess him up pretty bad, and she said she didn't want him messed

up, she wanted him dead, and I said 'Well'.... Q. Excuse me again for interrupting, but now who is the 'she' that Larry Pack keeps referring to? A. She is Jane Spivey. Q. O. K. Continue, please. A. And I said, 'Well, I can't get nobody to do that.' And so it rocked on a couple of weeks, and she asked me if—and she, Mrs. Spivey asked me if I could get someone to burglarize, well, she asked me to do it to start with, to go over there and burglarize the trailer and she'd give me $100.00. And I told her I didn't want to, and she said, 'Well, can you get someone to do it?' And so I called these two boys in Atlanta, they came up, they met Jane Spivey at my sister's house, Janie White, in Resaca, Georgia."

Agent W. E. Dodd of the Georgia Department of Investigation testified that Mrs. Spivey signed a waiver of rights form and confessed to her participation in the burglary. Officer McCumber, the Sheriff of Gordon County and a deputy testified that Mrs. Spivey's statement implicating herself was freely and voluntarily given in their presence and that she waived her right to remain silent or to have an attorney present. The statement and two waiver of rights forms signed by Mrs. Spivey were admitted in evidence.

Mrs. Spivey testified in her own behalf and repudiated her previous statement, asserting that Larry Pack had offered to protect her while she entered L. D. Spivey's trailer to retrieve some personal items Spivey had stolen from her, and that the break-in and burglary occurred without her knowledge. She also swore that she had repeatedly requested to have present an attorney who was representing her in other affairs before she was questioned.

The jury found Jane Spivey guilty of the burglary of the mobile home of L. D. Spivey. She contends that by allowing Officer McCumber to read Pack's statement when Pack was not present and did not testify, she was deprived of her right of confrontation and of cross examination of Larry Pack, and was denied a fair trial and due process of law. The essential question before us, then, is whether under the circumstances of this case Jane Spivey's burglary conviction must be set aside because of the admission of McCumber's testimony as to Pack's

statement. We conclude that the question has been answered in the negative by the Supreme Court of the United States in Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970).

Code § 38-306 provides that "After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." In Dutton v. Evans, supra, the Supreme Court considered this provision and concluded that it met the constitutional requirements of the confrontation and due process clauses even where the alleged accomplice did not appear as a witness at the defendant's trial. However, the court laid down no ironclad validations, holding merely that "The Georgia statute can obviously have many applications consistent with the Confrontation Clause, and we conclude that its application *in the circumstances of this case* did not violate the Constitution." Id., pp. 87, 88. (Emphasis supplied.)

Although we view the admission of McCumber's hearsay testimony as erroneous since Pack's absence can be attributed directly to the mishandling by the investigating authorities, based upon the predominant facts and logic by which Dutton was decided, that error was harmless. That there may be harmless constitutional error where it does not adversely affect substantial rights of the defendant is well settled. *Cauley v. State,* 130 Ga. App. 278, 288 (203 SE2d 239) (U. S. cert. den. 419 U. S. 877) and cits.

Here the state's case was not entirely dependent upon Pack's statement. It presented two co-defendant eyewitnesses as well as Mrs. Spivey's confession and this evidence was clearly sufficient to sustain the conviction. Therefore, McCumber's testimony was "of peripheral significance at most" and did not constitute "crucial" or "devastating" evidence. Dutton, supra, pp. 86, 87.

It further appears that Pack divulged the information to the Gordon County Sheriff's office voluntarily while being questioned about an entirely different matter. Thus his statement was spontaneous and against his penal interest. These are "indicia of reliability" which the Supreme Court viewed as

"determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." Dutton, p. 89. Also, the interlocking factual details in the confessions of Loggins, Shelton, Mrs. Spivey and Pack make it highly unlikely that a cross examination of Pack could have shown the jury that his statement, though made, was unreliable. Id.; See also in this regard, Division 3 of *Gale v. State,* 138 Ga. App. 261.

While disapproving the use by the prosecution of Pack's statement with only the sketchiest showing of his unavailability in court, we agree with the principle first enunciated by Justice Cardozo[1] and quoted in part again in Dutton: "The law, as we have seen, is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable man will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true . . . There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." Dutton, pp. 89-90.

*Judgment affirmed. Deen, P. J., concurs, Quillian, J., concurs in the judgment only.*

ARGUED FEBRUARY 4, 1976 — DECIDED MARCH 18, 1976 —
REHEARING DENIED APRIL 1, 1976 — ▬▬▬▬▬▬

*Mitchell, Mitchell, Coppedge & Boyett, Neil Wester,*

[1]Snyder v. Massachusetts, 291 U. S. 97, 122 (54 SC 330, 78 LE 674, 90 ALR 575).

*Cook & Palmour, Bobby Lee Cook, Bobby Lee Cook, Jr.,* for appellant.
    *Samuel J. Brantley, District Attorney,* for appellee.