## 59247. PITTS v. THE STATE.

BIRDSONG, Judge.

William Pitts was convicted of voluntary manslaughter and aggravated assault. He appeals on grounds that the trial court erred in refusing to suppress certain evidence, and in refusing to grant a mistrial on the basis that the state had without justification introduced evidence of appellant's bad character.

Appellant was indicted for murder and aggravated

assault. Appellant does not deny that, on February 11, 1979, he shot and killed Ricky Hudson and that he shot his estranged wife, Gwendolyn Pitts, in the mouth, foot and hand, and beat her with the pistol. Appellant testified, at some length, as follows: his wife had left him in January, 1979 for reasons he did not know, and she had started dating Ricky Hudson, whom appellant had known for years. During several confrontations and conversations after Mrs. Pitts moved in with her mother, appellant attempted to reconcile the marriage but Mrs. Pitts continued to vacillate between the affections of appellant and the attentions of Ricky Hudson. Appellant bore Ricky Hudson no hard feelings and understood the situation; during conversations concerning the matter, both men behaved like gentlemen. Ricky Hudson was his friend. He never threatened appellant, never pulled a weapon on him. Appellant had no reason to believe Hudson would harm him. At one point, Mrs. Pitts' mother told appellant that she would kill him if he came back to her house. Appellant's wife indicated to him that she would come back to him if he straightened out certain personal problems, which end he went to South Carolina to accomplish. When he returned, expecting to meet his wife, appellant learned she was with Ricky Hudson at her sister's house. Appellant was upset; he became extremely nervous and restless. He drove to his home and tried to watch television but was unable to relax and, several times, went outside to take deep breaths. Finally, he determined to resolve the issue and find out conclusively which man his wife would choose. He took his pistol with him because he thought Mrs. Pitts' mother might harm him, and he drove back to his wife's sister's house. He sat in his car nearby; he wavered, became afraid, did not wish to create any trouble, and started to leave; but he then heard a noise from the house and decided suddenly to go to the house. Ricky Hudson and Mrs. Pitts and another friend came out of the house; the two victims were getting in their car when appellant shot them. Appellant said: "[Ricky] was here by his car; and the door was [partially] opened, and my wife screamed and hollered, said something. And . . . she went inside the door. And that's when he stood back up, that's what it seemed like to me.

And when he stood back up, I didn't know what he had or what, so I just fired; and during the firing, really, I know I fired the gun; but in my sight or eyesight, I didn't see anything." It is undisputed that Ricky Hudson had no gun or other weapon.

Mrs. Pitts then testified that she left the appellant because she was tired of his beating her and running around, and that she had told him so. She had not dated Ricky Hudson before leaving her husband. She told appellant clearly that she wanted a divorce but he persistently tried to persuade her otherwise. On one occasion at her mother's house, Mrs. Pitts heard appellant tell Ricky Hudson that once he had seen them together and could have killed them then. (Mrs. Pitts' mother corroborated this conversation.) She went with him to look at new wedding rings and a new house because she was afraid not to and because she "had three kids by him." She had not promised to return to him if he went to South Carolina and did not agree to see him that night. She does not remember the shooting but remembers only standing beside Ricky Hudson while he tried to unlock the car door. She looked up and saw appellant standing in front of the car holding his arm with both of his hands, and pointing the gun. She does not recall the car door ever being opened by Hudson. She does not remember being shot, but remembers running to the other friend's car, trying to get in it, then being pulled to the end of the driveway by the appellant and being "beated all on my head." *Held:*

After the shooting, appellant turned himself in at the police station and identified himself as the one involved in the shooting. His Miranda rights were fully explained to him, but he declined to sign the waiver. The detective then asked two questions: "where is the gun; and will you take us to it?" Appellant readily agreed and, without being handcuffed, led the officers to his house and to his bedroom. He pointed out the gun and his bloodstained clothes where they lay on the bed. The gun was jammed or damaged and had a large wad of hair and flesh on the barrel.

While we would affirm the trial court's ruling that the two "statements" elicited after appellant refused to sign a waiver of his right to have counsel present were, in

the totality of the circumstances, voluntarily made, and that the consent to search was free and voluntary, we find it unnecessary to do so, since even if the trial court's ruling had been error, it was harmless beyond a reasonable doubt. *Kirkland v. State,* 141 Ga. App. 664 (234 SE2d 133); *Blackwell v. State,* 139 Ga. App. 477, 488 (228 SE2d 612); *Cauley v. State,* 130 Ga. App. 278, 286-288, 290-293 (203 SE2d 239). Appellant was indicted for murder. He does not deny killing Ricky Hudson and wounding his wife. His defense was patently that he had not killed Ricky Hudson with malice aforethought (Code Ann. § 26-1101 (a)), but had done so in the heat of passion. There was no evidence authorizing a verdict of justification, involuntary manslaughter, misfortune, accident or criminal negligence. The evidence demanded a verdict of at least voluntary manslaughter. It is highly probable that the evidence, i. e., the statements and items seized and sought to be suppressed, did not contribute to the judgment, and it was harmless beyond a reasonable doubt (*Kirkland,* supra), because the verdict was demanded, even in the absence of the evidence complained of. *Cauley,* supra. The same is true of any evidence which might have improperly placed appellant's character in issue. Moreover, the verdict against appellant is more favorable than would be the only other possible verdict under the facts of the case. We find no merit in the appeal.

*Judgment affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED JANUARY 14, 1980 — DECIDED FEBRUARY 28, 1980.

*Edward D. Tolley* for appellant.

*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.